UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles COMPTON, Defendant–
Appellant.

No. 92–50342.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 3, 1993.

Decided Sept. 15, 1993.

Beverly A. Barrett, San Diego, CA, for defendant-appellant.

Larry A. Burns, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: NOONAN, FERNANDEZ, and KLEINFELD, Circuit Judges.

NOONAN, Circuit Judge:

Charles Compton appeals his conviction of attempted aircraft piracy in violation of 49 U.S.C.App. § 1472(i) and of interference with a fight crew in violation of 49 U.S.C.App. § 1472(j). Cases construing these statutory

provisions are few. The offenses involved are great, and of much interest to air travelers. No prior published case in this circuit has addressed the crime of attempted aircraft piracy.

We affirm Compton's conviction of attempted air piracy but vacate entry of judgment and sentence on his conviction of interference with a flight crew member.

## FACTS

The following facts were established at trial:

On February 10, 1991, Charles Compton flew on Southwest Airlines from Oakland, California on a flight bound for Houston, Texas by way of San Diego, California. Forty-five minutes into flight, Compton handed Diane Colvin, the senior flight attendant, a note that read: "I have nitro in my hand and a bomb in my luggage. I want $13 Million ransom for plane and passengers. Stop in New York. Have $13 million waiting. Pick up. Refuel. Fly to Cuba. I am not alone." Signed, "L.L.A.".

Colvin was frightened by the message and believed that the plane was being hijacked. She excused herself from Compton and took the note to the back of the cabin where she showed it to another flight attendant, Maria Blanks. Blanks contacted Captain William Schmidt to inform him that the plane was being hijacked. Schmidt had no doubt that the plane was in fact being hijacked and felt that his actions were now being dictated by the hijacker. He so notified air traffic controllers. To avert the loss of air pressure in the event of an explosion he caused the aircraft to descend from an altitude of 26,000 feet to 10,000 feet. This move put the plane on a route that Captain Schmidt had never flown before and created a danger to the aircraft and to the passengers.

Schmidt told flight attendants to tell the hijacker that the aircraft did not have enough fuel to make it to New York and that the plane would have to land in San Diego to refuel. Colvin relayed the message to Compton. He sat back in his seat, contemplating the information, and then announced, "I'm not serious." Colvin continued to believe that he was serious and suspected that there was a bomb and an accomplice on the plane. She was unable to perform her usual duties because she was watching Compton and keeping Schmidt informed of his activities.

Fifteen or twenty minutes after he was first notified of Compton's threat, Schmidt landed the plane at San Diego. Compton was arrested. The plane was searched and after a 2½ hour delay continued its flight.

Compton told a newspaper reporter the next day that he had attempted to hijack the plane because he was down on his luck and needed money. He said he had written the note before he boarded the plane and that the hijacking had at first seemed an easy way to make money, but "after I got into it I decided it wasn't going to work."

## PROCEEDINGS

Compton was indicted for air piracy in violation of 49 U.S.C.App. § 1472(i), charged inter alia with seizing and attempting to seize and exercise control of an aircraft by force and violence and threat of force and violence. He was also indicted for interfering with flight crew members in violation of 49 U.S.C. § 1472(j), charged with assaulting, intimidating and threatening flight crew members so as to interfere with their performance of their duties. He was convicted on both counts and sentenced to 30 years imprisonment for the attempted aircraft piracy and for 20 years on the second charge, the second sentence to run concurrently with the first.

Compton appeals.

## ANALYSIS

[redacted] *The evidence.* Compton first challenges the sufficiency of the evidence. He argues that he did not interfere with the performance of "a flight crew member." The statute does distinguish between a "flight crew member" and a "flight attendant." However, by the note to Colvin, Compton set in motion a chain of events that he must have intended to affect the captain of the plane. He did affect the conduct of the captain. He did interfere by threat with the performance

of the captain's duty. The statute does not require a specific intent. Cf. *United States v. Meeker,* 527 F.2d 12, 14 (9th Cir.1975). The evidence amply supports the conviction.

 Compton at the trial denied wanting to fly to Cuba with thirteen million dollars and asserted that he believed no one would take him seriously. He now argues that he made no effort other than the note to seize control of the aircraft. He did not lift a finger in menace; but he did lift his hand to deliver the note. As with bank robbery where one can be convicted of attempt for handing a teller a note, *see United States v. Hopkins,* 703 F.2d 1102, 1103 (9th Cir.), *cert. denied,* 464 U.S. 963, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983), here, too, delivery of the note was more than sufficient to attempt aircraft piracy. General or wrongful intent was established. *See United States v. Castaneda–Reyes,* 703 F.2d 522, 525 (11th Cir.), *cert. denied,* 464 U.S. 856, 104 S.Ct. 174, 78 L.Ed.2d 157 (1983). An ordinary, reasonable crew person would have been put in fear by the note's threatening contents. *United States v. Tabacca,* 924 F.2d 906, 911 (9th Cir.1991). The use of a threat to seize the aircraft was sufficient to constitute the attempt. *See United States v. Figueroa,* 666 F.2d 1375, 1378 (11th Cir.1982). That the crew "did not overtly challenge his hegemony" did not lessen Compton's control and his attempt at control. *United States v. Mena,* 933 F.2d 19, 24 (1st Cir.1991). In response to his action the plane's normal flight path was disrupted—evidence in a comparable case of actual air piracy. *Id.* The government's case of attempted aircraft piracy was amply proved.

 *Amendment of the indictment.* The indictment charged Compton only with interference with the duties of a flight crew member, but the prosecution presented evidence that Compton not only interfered with the duties of the flight crew but also with those of the flight attendant. *Compton contends* that presentation of evidence that he interfered with the flight attendant's duties constituted constructive amendment of the indictment and thus is *per se* prejudicial. Although the statute differentiates between interference with flight crew and flight attendants, Compton's argument that this was constructive amendment is without merit. Compton used the flight attendant as an intermediary to communicate his threat to the Captain, necessarily interfering with the flight attendant's duties. It is difficult to imagine how the prosecution could have explained the events of the flight without bringing in evidence showing that Compton interfered with the flight attendant's duties in addition to those of the flight crew.

 *The judgment on multiple offenses.* On the facts of the case, Compton could not have committed attempted aircraft piracy without interfering by threat with the performance of the pilot's duty. The latter, lesser offense was necessarily committed in completing the first, greater offense. The government concedes the point and notes that the procedure to be followed was established in *United States v. Palafox,* 764 F.2d 558, 564 (9th Cir.1985) (en banc). Consequently, the district court's entry of judgment and sentence as to Count 2 must be VACATED and STAYED. The stay will become final at the expiration of Compton's completion of his sentence on Count 1, which is here *AFFIRMED.*