**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Auburn CALLOWAY, Defendant–
Appellant.**

No. 95–6206.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 2, 1996.

Decided June 20, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied July 25, 1997.

John T. Fowlkes, Assistant U.S. Atty., (argued and briefed), Office of the U.S. Attorney, Memphis, TN, for Plaintiff–Appellee.

Robert C. Brooks (argued and briefed), Memphis, TN, for Defendant–Appellant.

Auburn Calloway, Atlanta, GA, pro se.

Before: LIVELY, NELSON, and RYAN, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

Convicted on federal charges of attempted aircraft piracy and interference with flight crew members, defendant Auburn Calloway received concurrent sentences of life imprisonment. On appeal, Mr. Calloway presents six assignments of error: (1) the district court erred in refusing to suppress certain evidence; (2) the evidence as a whole was insufficient to support the conviction for attempted aircraft piracy; (3) the district court's jury instructions constructively amended the indictment; (4) the jury was not properly instructed on the wrongful intent element of the offense of attempted aircraft piracy; (5) the conviction for interference with flight crew members must be vacated as a lesser-included offense of attempted aircraft piracy; and (6) the district court erred in departing upward from the applicable sentencing guideline range.

The government concedes that interference with flight crew members is a lesser-included offense of attempted aircraft piracy. We shall vacate the interference conviction on the strength of that concession. We find no other reversible error, and the conviction and life sentence for attempted aircraft piracy will be affirmed.

## I

Mr. Calloway worked as a flight engineer for Federal Express. The company began investigating irregularities in the reporting of Mr. Calloway's flight hours, and he was directed to appear at a hearing scheduled for April 8, 1994, in Memphis, Tennessee. (The company's headquarters are in Memphis, and Mr. Calloway was a resident of that city.)

Shortly before the date of the hearing Mr. Calloway began rearranging his financial affairs. He caused about $40,000 worth of securities to be sent to his former wife, and he sent her cashier's checks totaling nearly $14,000. He also paid a visit to the FedEx employee benefits office and changed the beneficiaries of an accidental death and dismemberment policy and a term life insurance policy.

One of the FedEx flights scheduled to operate out of Memphis on the day before the hearing date was Flight 705, a DC–10 cargo plane bound for California. Prior to the departure of this flight on April 7, 1994, Mr. Calloway presented himself at the plane in full flight gear and with carry-on items. Although he was not a member of the flight crew, he entered the cockpit and began adjusting instruments and controls as if he were. The real crew members—pilot David Sanders, co-pilot James Tucker, and flight engineer Andy Peterson—arrived later, and they assumed Mr. Calloway was a "jumpseater" (*i.e.*, an employee passenger).

After the plane took off, Mr. Calloway entered the cockpit and began attacking the crew with a hammer. He then left the cockpit, armed himself with a spear gun and spear, and renewed his assault. At some point in the course of these events crew

members were able to request—and were cleared for—an emergency return to the Memphis airport.

While two of the crew members struggled with Mr. Calloway, pilot Sanders successfully completed an emergency landing. A paramedic then entered the aircraft and handcuffed Calloway. The plane was later searched by FedEx security personnel, who found two claw hammers, two sledgehammers, a spear gun, and a spear. They also discovered a note from Mr. Calloway to his ex-wife, describing the author's apparent despair.

The crew of Flight 705 sustained serious injuries. Co-pilot Tucker suffered severe skull fractures, and he developed motor control problems in his right arm and right leg. He was also partially blinded in one eye as a result of Mr. Calloway's attempt to gouge the eye out. Pilot Sanders suffered several deep gashes in his head, and doctors had to sew his right ear back in place. He was stabbed in his right arm and had a dislocated jaw. Flight engineer Peterson's skull was fractured and his temporal artery severed.

Douglas Kinzie, a FedEx employee who shared an apartment with Mr. Calloway, called the Federal Bureau of Investigation after learning of the attack. Mr. Kinzie reported that he had seen a note in the apartment, presumably written by Mr. Calloway, listing the names of the Flight 705 crew. FBI agents also learned from FedEx officials about the note found in the plane and about the change of beneficiaries on the insurance policies.

On the strength of this information, the FBI applied for a warrant to search Mr. Calloway's apartment. A magistrate judge issued the warrant, which authorized seizure of "[d]ocuments listing names of Federal Express crew members, notes concerning Federal Express Flight 705, [and] records pertaining to insurance beneficiary transfers." When FBI agents executed the warrant, they seized among other things a note listing the Flight 705 crew members, a note listing the weapons used in the attack, two bank receipts, Mr. Calloway's will, and a power of attorney form.

On May 17, 1994, a federal grand jury handed up a two-count indictment charging Mr. Calloway with attempted aircraft piracy in violation of 49 U.S.C. § 1472(i) (now codified at 49 U.S.C. § 46502) and interference with flight crew members in violation of 49 U.S.C. § 1472(j) (now codified at 49 U.S.C. § 46504). Mr. Calloway moved to suppress the evidence seized from the apartment, arguing that the magistrate judge lacked probable cause to issue the warrant and that the FBI agents exceeded the scope of the warrant in executing it. The motion was denied in all respects relevant to this appeal.

At sentencing, after the petit jury had found the defendant guilty on both counts of the indictment, the district court departed from a sentencing guideline offense level of 38 and used a level of 43 instead. The guideline range for offense level 38, absent any significant prior criminal history (and Mr. Calloway had none), is imprisonment for 235–293 months. The guideline range for offense level 43, irrespective of criminal history, is life imprisonment.

## II

On appeal, Mr. Calloway challenges his convictions on several grounds. First of all, he says, the district court erred in denying his motion to suppress the evidence obtained in the search of his apartment. We disagree.

### A

A magistrate's determination of probable cause is entitled to "great deference" and must not be reversed in the absence of clear error. *United States v. Dotson,* 49 F.3d 227, 229–30 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 141, 133 L.Ed.2d 87 (1995). Probable cause is determined by examining the totality of the circumstances, and it must be given a "practical, nontechnical" construction. *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983) (quotation and citation omitted).

We believe that the magistrate judge had ample support for his finding of probable cause in this case. As we have seen, FBI agents knew of the note written by Mr.

Calloway to his ex-wife, and they knew that the suspect had recently changed the beneficiaries of his life insurance policies. Mr. Calloway's roommate had informed the agents of a note, believed to be written by Mr. Calloway and located in his apartment, listing the names of the Flight 705 crew. The magistrate judge thus had highly pertinent information from a named informant, and the finding of probable cause was not erroneous. See *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir.1986)("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence"), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987).

**B**

■ The warrant authorized seizure of "[d]ocuments listing names of Federal Express crew members, notes concerning Federal Express Flight 705, [and] records pertaining to insurance beneficiary transfers." Several documents not described in the warrant were seized and introduced at trial: (1) a note listing weapons; (2) two bank receipts; (3) Mr. Calloway's will; and (4) a power of attorney. Mr. Calloway argues that these items should have been suppressed because their seizure exceeded the scope of the warrant.

■ The seizure was justified, in our opinion, by the plain view exception to the warrant requirement. To invoke the plain view doctrine, the evidence must be "(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer who has a lawful right of access to the object itself." *United States v. Roark*, 36 F.3d 14, 18 (6th Cir.1994)(citing *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). In this case the agents were executing a valid search warrant that required them to seize certain documentary evidence. Unless they were to seize every scrap of paper in the apartment, the agents had to examine such documents as they came

across—and the seized documents were obviously in plain view of the agents responsible for examining them.

■ The incriminating character of the evidence in question was "immediately apparent" within the meaning of that term as used in the relevant caselaw. The standard does not demand an "unduly high degree of certainty;" rather, a plain view seizure is "presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Texas v. Brown*, 460 U.S. 730, 741–742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)) (emphasis omitted). Our court has applied the following factors, none of which is determinative, to assess the "immediately apparent" standard: (1) the nexus between the seized object and the items particularized in the warrant; (2) whether the intrinsic nature or appearance of the seized object gives probable cause to associate it with criminal activity; and (3) whether probable cause is the direct result of the executing officer's instantaneous sensory perceptions. *United States v. Beal*, 810 F.2d 574, 576–77 (6th Cir.1987).

In light of these criteria, we believe that the incriminating character of the documents seized in Mr. Calloway's apartment was immediately apparent. The note listing weapons was clearly incriminating, for the FBI then knew what weapons were used in the attack. The agents reasonably concluded that the bank receipts, the power of attorney, and the will were relevant, because they knew that Mr. Calloway had named new insurance beneficiaries just a week before, and the agents plausibly suspected that he had completed other suspicious financial and legal arrangements. One agent testified at the suppression hearing that he thought the will might be connected with the beneficiary issue—an incorrect but hardly unreasonable assumption. We believe that the agents were justified in seizing all the evidence admitted at trial, and we are satisfied that any error in the admission of this evidence was harmless in any event.

## III

Mr. Calloway argues next that the evidence against him was insufficient to support a conviction for attempted aircraft piracy. The conviction must be affirmed, however, unless, viewing the evidence in the light most favorable to the prosecution, no reasonable jury could have found the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The offense of aircraft piracy has four elements: (1) seizure or exercise of control of an aircraft; (2) by force, violence, or intimidation, or the threat thereof; (3) with wrongful intent; and (4) within the special aircraft jurisdiction of the United States. *United States v. Dixon*, 592 F.2d 329, 339–40 (6th Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979). Mr. Calloway focuses on the element of seizure or control, arguing that there was no proof that he tried to gain control over the plane. In fact, he argues, the evidence suggests that he contemplated a situation where there would be *no* control of the plane.

We do not find the argument persuasive. It makes no difference whether Mr. Calloway hoped to crash the plane himself or let it crash with no one at the controls; either way, he would have been exercising dominion over the plane. With the crew incapacitated, Mr. Calloway would have been in control regardless of how he expected to use such control. What is significant is the attempt to wrest control of the aircraft from its crew—not the defendant's flight plan or lack thereof.

## IV

According to Mr. Calloway, the district court made two fundamental mistakes in instructing the jury. First, he argues that the district court constructively amended the indictment by allowing the jury to convict him of attempted aircraft piracy through the use of intimidation, a method of committing the crime that was not charged in the indictment. Second, he contends that, by failing to give an instruction on specific intent, the district court failed to inform the jury on an essential component of attempted aircraft piracy. Mr. Calloway raised neither of these points at trial, so we may not reverse the conviction absent plain error or defects affecting the defendant's substantial rights. *United States v. Nelson*, 27 F.3d 199, 202 (6th Cir.1994); Rule 52(b), Fed.R.Crim.P.

### A

The district court gave this instruction on the attempted aircraft piracy charge:

"Count 1 of the indictment, which charges the defendant with an attempted aircraft piracy, states that ... Calloway, knowingly and with wrongful intent did *by force and violence and the threat of force and violence* attempt to seize control of an aircraft...."

"The law or statute which the defendant is alleged to have violated in Count 1 provides in pertinent part: 'Whoever commits or attempts to commit aircraft piracy as herein defined is guilty.... As used in this subsection, the term aircraft piracy'— I'm still reading from the statute, the law—'means any seizure or exercise by force or violence or threat of force or violence *or by any other form of intimidation*, and with wrongful intent, of an aircraft within the special aircraft jurisdiction of the United States.'"

"In order for the defendant to be found to have committed attempted aircraft piracy, you must find that the government had proved each of the following elements beyond a reasonable doubt; first, that the defendant attempted to seize or exercise control over the aircraft; second, the defendant used force or violence, or threat of force or violence *or any other form of intimidation;* third, the defendant acted with wrongful intent; and fourth, the aircraft was in the special aircraft jurisdiction of the United States."

"*The indictment alleges* that the defendant with wrongful intent attempted to seize control of an aircraft *by force and violence and the threat of force and violence.* The term 'by force and violence,' and 'threat of force and violence,' in Count 1 of the in-

dictment are alternative ways in which the offense may be committed. The government is not required to prove all of the alternative ways in which the offense may be committed ... but need prove only one of them beyond a reasonable doubt." (Emphasis supplied.)

Mr. Calloway argues that the inclusion of the "any other form of intimidation" language—a means of attempting aircraft piracy not charged in the indictment—constructively amended the indictment. Although constructive amendments are prejudicial *per se* and require reversal, *United States v. Ford,* 872 F.2d 1231, 1235 (6th Cir.1989), *cert. denied,* 495 U.S. 918, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990), we are not persuaded that the instructions given the jury here effected such an amendment.

The initial reference by the district court to "any other form of intimidation" occurred in a recital of what the statute says. The court specifically stated that it was quoting from the statute. The only other use of this phrase occurred in a passage where the jury was told what is required for conviction as far as the statute is concerned. When the court turned to the indictment itself, the court limited its discussion to force, violence, and threats of force and violence. The court accurately and concisely instructed the jury that the government had to prove beyond a reasonable doubt that Mr. Calloway either used force and violence or threats of force and violence. There is no plain error here. *Cf. Nelson,* 27 F.3d at 202 ("the instruction must be viewed in its entirety, and a misstatement in one part of the charge does not require reversal if elsewhere in the instruction the correct information is conveyed to the jury in a clear and concise manner") (quoting *United States v. Pope,* 561 F.2d 663, 670 (6th Cir.1977)).

**B**

 Mr. Calloway next argues that the district court failed to instruct the jury on one of the elements of attempted aircraft piracy, the jury not having been told that the offense requires proof of specific intent to commit aircraft piracy. In the context of an "attempt" crime, specific intent means that the defendant consciously intends the completion of acts comprising the choate offense. In other words, the completion of such acts is the defendant's purpose. Where nothing more than general criminal intent is required, in contrast, the requirement may typically be satisfied by a showing that the defendant knew his actions would produce the prohibited result, or recklessly disregarded a known risk that they would do so.

 The district court gave the following instruction on the required state of mind:

"The term 'wrongful intent' as used as an element of the offense means the general criminal intent that is present when one attempts to seize control of an aircraft without having any legal right to do so. To find wrongful intent, *you must find that the defendant acted knowingly; that is, he acted voluntarily and intentionally* and not because of mistake or accident or other innocent reason." (Emphasis supplied.)

We shall assume for purposes of analysis that the instruction did not require the jury to find specific intent. This brings us to the question whether the statute requires such an intent.

Two of our sister circuits have held that it does not. See *United States v. Compton,* 5 F.3d 358, 360 (9th Cir.1993); *United States v. Castaneda–Reyes,* 703 F.2d 522, 525 (11th Cir.), *cert. denied,* 464 U.S. 856, 104 S.Ct. 174, 78 L.Ed.2d 157 (1983). Aircraft piracy is defined as "any seizure or exercise of control, by force or violence or threat of force or violence, or by any other form of intimidation, *and with wrongful intent,* of an aircraft within the special aircraft jurisdiction of the United States." 49 U.S.C. § 1472(i)(2) (now codified at 49 U.S.C. § 46502(a)(1)(A)) (emphasis supplied). The *Compton* and *Castaneda–Reyes* courts concluded that the "wrongful intent" required by this section is only a general criminal intent, and that this general criminal intent applies to the inchoate offense as well as the choate offense.

 The issue is an open one in our circuit, as we believe it is in every circuit except the Ninth and the Eleventh. The general rule, however, is that attempt crimes

require proof of a specific intent to complete the acts constituting the substantive offense. See Wayne R. LaFave and Austin W. Scott, Jr., *Substantive Criminal Law* § 6.2(c) (1986). The intent to finish the crime, coupled with affirmative acts toward that end, is a *sine qua non* of a punishable attempt. *Id.* § 6.2.

We find it difficult to see why the specific intent requirement should not apply to attempted aircraft piracy. It is true that the definition of aircraft piracy in former 49 U.S.C. § 1472(i)(2) requires only a general criminal intent, but the relevance of this datum is not immediately apparent to us—for many attempt crimes require a specific intent even though the completed offense does not. *Id.* § 6.2(c). If we had to decide the issue— which, for reasons to be explained shortly, we do not—we should be inclined to hold that the offense of attempted aircraft piracy requires proof of a specific intent to complete the acts constituting aircraft piracy.

Mr. Calloway made no contemporaneous objection to the challenged instruction—and although we are assuming that the instruction was erroneous, the error does not require reversal unless it rose to the level of "plain error" or its equivalent. See *Johnson v. United States,* — U.S. ——, ——, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997); *United States v. Taylor,* 102 F.3d 767, 769 (6th Cir.1996); Rule 52(b), Fed.R.Crim.P.: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

■■■ We "cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). "Current law," for purposes of plain error review, is the law as it exists at the time of review. *Johnson,* at ——, 117 S.Ct. at 1549; *Taylor,* 102 F.3d at 771. Applying this principle here, we cannot say that the legal proposition now being advanced by Mr. Calloway has been clearly established. As noted above, the only two circuits to have confronted the issue before now both have rejected a specific intent requirement. An error cannot be plain where

every court to have considered the matter has found it not to be an error at all.

Our authority under Rule 52(b) is discretionary, moreover. The rule says that plain errors "may" be noticed. *Cf. Olano,* 507 U.S. at 735, 113 S.Ct. at 1778. Plain errors are noticed when they "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

The instant proceedings were not so affected by the presumed instructional error. The evidence of Mr. Calloway's guilt was overwhelming, and in no way did the jury instructions seriously affect the fairness or integrity of Mr. Calloway's trial. No reasonable jury could have found that Mr. Calloway did *not* have the specific intent to seize control of the plane. See *Taylor,* 102 F.3d at 771 ("we conclude that a properly instructed jury would have returned a guilty verdict"). Against this background, we should not be inclined to reverse the attempted aircraft piracy conviction even if we considered the presumed error to be "plain."

Finally, we note that a reversal of the conviction would make little practical difference in any event. We are vacating Mr. Calloway's conviction for interference with flight crew members as a lesser-included offense of attempted aircraft piracy. We would not take this step, of course, were we to reverse the attempted aircraft piracy conviction—and the district judge made it clear that she thought the appropriate sentence for *each* offense was life imprisonment.

V

■■ The district court cited the following grounds as justification for its upward departure from the offense level prescribed by the sentencing guidelines for "heartland" cases: Mr. Calloway's offense (1) involved multiple victims, (2) caused serious physical injury, (3) caused significant property damage, and (4) created the potential for extreme danger to the public. Mr. Calloway argues that the first ground for departure—multiple victims—was improper because multiple victims are the norm, not the exception, in aircraft piracy cases. He further argues that the district court failed to articulate any link

between its departure and the structure of the guidelines.

We have no warrant to set aside a departure unless we conclude that the district court abused its discretion. *Koon v. United States,* —— U.S. ——, ——, 116 S.Ct. 2035, 2043, 135 L.Ed.2d 392 (1996). No such abuse occurred here, in our view. Mr. Calloway did harm multiple victims, and it is not nearly so obvious to us as it is to Mr. Calloway that the aircraft piracy guideline (U.S.S.G. § 2A5.1) contemplates multiple victims. Mr. Calloway's crime involved at least four victims: the three crew members and FedEx. And the extent of the victimization was extreme, for all three crew members suffered serious physical injuries—a ground for departure expressly contemplated by U.S.S.G. § 5K2.2. FedEx incurred over $800,000 in property damage as a result of Mr. Calloway's crime—another expressly approved ground for departure. See U.S.S.G. § 5K2.5. Finally, citing § 5K2.14, the district court took into account the risk to the public (*i.e.,* a crash in Memphis) created by Mr. Calloway's attack. This was entirely proper. What occurred here was not simply a rerouting of the plane, after all.

The conviction on Count II of the indictment (interference with flight crew members) is **VACATED,** and the conviction and sentence on Count I of the indictment (attempted aircraft piracy) are **AFFIRMED.**