**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory GALLATIN, Defendant–
Appellant.**

No. 02–3899.

United States Court of Appeals,
Sixth Circuit.

Jan. 12, 2004.

Kenneth L. Parker, U.S. Attorney's Office, Cincinnati, OH, for Plaintiff–Appellee.

Bryan R. Perkins, Cincinnati, OH, for Defendant–Appellant.

Before NORRIS, BATCHELDER, and COLE, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendant Gregory A. Gallatin pleaded guilty to conspiracy to distribute marijuana, 21 U.S.C. § 846, and possession with the intent to distribute, 21 U.S.C. § 841(a)(1). On appeal, he contends that the district court erred in the following respects: 1) by denying his motion to suppress; 2) by not permitting him to withdraw his guilty plea; 3) by attributing six hundred pounds of marijuana to him for sentencing purposes; and 4) for enhancing his sentence by two levels because he assumed a supervisory role in the conspiracy.

Finding no error, we affirm the judgment of the district court in all respects.

## I.

Defendant's troubles began when an "associate," Kevin Mueller, attempted to sell drugs to a Drug Enforcement Agency ("DEA") informant. According to an affidavit submitted by Agent Brian Stine in support of his application for a search warrant, Mueller told the informant that he was traveling to Arizona in November 2000 to obtain roughly 250 pounds of marijuana to be transported to Cincinnati.

The affidavit states that the informant recorded several conversations with Mueller on December 1st. They arranged to meet in the parking lot of a store located in West Chester, Ohio, where the informant would purchase 50 pounds of marijuana for $50,000.00. Mueller arrived at the designated time with an associate, Walid Karouz. They were both arrested and a search of their car uncovered 55 pounds of marijuana.

After waiving his *Miranda* rights, Mueller told the DEA agents that he had delivered 200 pounds of marijuana to "a person by the name of Greg Gallatin, who lived in Silverton, Ohio." He then led the agents to defendant's home, which the affidavit incorrectly indicates was located at 6137 North Fordham, instead of West Fordham. Once there, however, the agents "observed a sign in the front yard of the residence which indicated 'G&G Gallatin.'"

The remainder of the six-page affidavit includes a description of typical drug trafficking activities and chronicles the transaction between Mueller and the informant. While the affidavit states that Mueller traveled to Arizona with two associates, it does not name them, nor does it refer to defendant in any detail beyond that summarized above.

At 7:00 p.m. on the day of Mueller's arrest, eight DEA agents and one uniformed Silverton police officer executed a search warrant for defendant's home. According to Agent Stine, they proceeded at a "slow pace" through defendant's yard while Stine yelled, "6137 Fordham. Police. Search warrant. Come to the door." Agent Stine testified at the suppression hearing that Tiffany Phillips, defendant's teenage step-daughter, came to the front door and pulled the mini-blinds aside so that she could see out. Although Phillips conceded that she knew that the men were police officers, she allowed the mini-blinds to close and walked away from the door. After waiting five to ten seconds, Agent Stine ordered that the door be forced open. The agents found approximately 110 pounds of marijuana, a loaded gun, and other materials indicative of drug trafficking in defendant's bedroom.

In its order denying defendant's subsequent motion to suppress, the district court characterized the "knock and announce" aspect of the search in these terms:

The Court finds Agent Stine's testimony credible. Further, the basic components of his testimony and that of Ms. Phillips are not irreconcilable. For a sixteen-year-old girl at home without her parents, the arrival of law enforcement officials in full uniform and demanding entry pursuant to a search warrant may have been startling and even frightening. From her perspective, events may have seemed to move much faster than they actually did. Here, however, the Court must apply an objective test of reasonableness.... Agent Stine loudly announced his authority and purpose for approximately forty seconds. He knocked several times. After noticing that an occupant of the house had observed him, he waited ten seconds before forcing entry. Persons inside the house should have been alerted by that time.

Defendant, represented by counsel, entered a conditional guilty plea in open court, which preserved his right to appeal the denial of his motion to suppress. Some eight months later he sought to withdraw his plea after learning that the recommended sentence exceeded his expectations. As a basis for his motion to withdraw, defendant claimed that counsel essentially provided ineffective representation because he did not believe defendant's version of events and called him a liar. The district court denied the motion for reasons discussed later in this opinion.

The district court sentenced defendant to 110 months of incarceration, three years of supervised release, and fined him $1,000.00.

## II.

### 1. Motion to Suppress

#### a. Standard of Review

In considering a motion to suppress, a district court's factual findings will be reviewed for clear error while its conclusions of law will be reviewed de novo. *United States v. Hurst,* 228 F.3d 751, 756 (6th Cir.2000). Moreover, the evidence must be reviewed, "in the light most likely to support the district court's decision." *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir.1999) (quoting *Unit-*

ed States v. Braggs, 23 F.3d 1047, 1049 (6th Cir.1994)).

### b. Sufficiency of the Affidavit

Defendant contends that the affidavit submitted by Agent Stine in support of his application for a search warrant lacked the kind of detail and corroboration required to support probable cause.

The district court applied the "totality of the circumstances" test articulated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983),[1] and concluded that the affidavit was sufficient to establish probable cause:

> The warrant application in this case passes muster. Only paragraph "t" specifically references Mr. Gallatin. That paragraph is not a bare allegation of illegality, however. It notes that Mr. Mueller identified the particular amount of marijuana that he claimed to have delivered to Mr. Gallatin. Also, the paragraph recites that Mr. Mueller took federal agents to the supposed residence of Mr. Gallatin and that agents observed a sign in the front yard bearing Mr. Gallatin's name. In addition to paragraph "t," moreover, there are eight other paragraphs that specifically describe a series of transactions between the informant, Kevin Mueller, and federal agents. These paragraphs form a sufficient basis upon which a magistrate judge could find probable cause. The Defendant directs the Court to *United States v. Weaver*, 99 F.3d 1372 (6th Cir.1996), as an analogous case. The application for a warrant in this case differs significantly from the one in *Weaver*, however, be-

cause there the application "present[ed] no underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own 'belief' that these quantities of marijuana were present 'for the purpose ... of unlawful possession, sale or transportation,' or even that marijuana would be on the premises when the warrant was executed." *Id.* at 1378. Here, in contrast, the application does present underlying factual circumstances that address each of these points. These factual circumstances establish that Mr. Mueller was participating in significant drug-trafficking activities. An independent informant confirmed certain aspects of this trafficking, and federal agents' transactions with Mr. Mueller confirmed others. In these circumstances, the Fourth Amendment did not require law enforcement officials to obtain additional, individual, independent corroboration that Mr. Gallatin was likely to possess illegal drugs in his home.

Defendant reiterates the argument he put to the district court and once again relies upon *Weaver, supra.* In his view, the affidavit presented to the magistrate was a classic "bare bones" effort that primarily contained boilerplate information and only fleetingly referred to him. In his view, the DEA failed to undertake independent investigatory work to corroborate that the marijuana was delivered to defendant's house. He then refers us to *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993), to support his position. In *Leake*, police received an anonymous tip from a tradesman who claimed to have seen bales

---

1. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and the 'basis of knowledge' or per- sons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

of marijuana in the basement of a home where he was working. The informant refused to give his name but claimed to have recognized the smell of the drug from youthful indiscretions of his own. The officer who received the tip then watched the house in question for four hours but observed nothing particularly suspicious. This court affirmed the suppression of the evidence based upon the fact that the affidavit in support was not "rich" in detail and, moreover, the officer's attempt to corroborate was insufficient to support a finding of probable cause. *Id.* at 1365.

While the affidavit supporting the search warrant admittedly does not provide a wealth of detail about defendant, we agree with the district court that it includes sufficient indicia of criminal activity for a magistrate to find probable cause. There is considerable detail concerning the drug trafficking activities of Mr. Mueller and, against his own penal interest, he provided further information directly linking this own criminal actions to defendant's residence: he delivered 200 pounds of marijuana to defendant at his home. "When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." *United States v. Pelham,* 801 F.2d 875, 878 (6th Cir.1986); *see also United States v. Calloway,* 116 F.3d 1129, 1133 (6th Cir.1997). In this case, Mueller was both named in the affidavit and had been present for the delivery of drugs. Furthermore, the affidavit contains a substantial amount of detailed information about the amount of drugs being transported from Arizona, which is consistent with the prearranged deal for fifty pounds of marijuana between the informant and Mueller.

### c. Inaccuracies in the Affidavit

As mentioned earlier, the address of defendant's house listed in the search warrant is 6137 North Fordham when in fact the correct address is 6137 West Fordham. Defendant contends that this clerical error means that the warrant did not comply with the Fourth Amendment. "The test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. Pelayo–Landero,* 285 F.3d 491, 496 (6th Cir.2002) (citations and quotation marks omitted).

Because defendant failed to raise this issue in the district court, our review is for plain error. Fed.R.Crim.P. 52(b). In any event, the warrant described both the house's physical appearance, and most importantly, the fact that the house to be searched had a sign which read "G&G Gallatin." With information so specific and unique to that house, there was little possibility that the wrong house would have been searched. In our view, defendant has failed to show any error, let alone plain error.

### d. Failure to Knock and Announce

The district court credited the suppression hearing testimony of Agent Stine with respect to the manner in which the authorities announced themselves before entering defendant's home. Pursuant to 18 U.S.C. § 3109, an "officer may break open any outer ... door ... of a house ... to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance[.]"

Defendant argues that the agents did not wait a reasonable time before bursting through the door because there were no exigent circumstances present to justify forced entry. After Phillips looked through the blinds, the agents only waited five to ten seconds before breaking down the door. Phillips conceded at the suppression hearing, however, that she recognized the agents as police officers. "The proper trigger point ... is when those inside should have been alerted that the police wanted entry to execute a warrant." *United States v. Spikes*, 158 F.3d 913, 925 (6th Cir.1998).

■ Viewing the factual findings of the district court, as we must, for clear error, we conclude that the law enforcement officers complied with the requirements of the "knock and announce" rule.

## 2.  *Motion to Withdraw Guilty Plea*

### a.  *Standard of Review*

This court reviews the denial of a motion to withdraw a guilty plea under an "abuse of discretion" standard. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir.1996). A district court abuses its discretion "when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir.1998) (citation omitted).

*United States v. Lineback*, 330 F.3d 441, 443 (6th Cir.2003).

### b.  *The District Court's Reasoning*

■ Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a guilty plea if he can "show a fair and just reason for requesting the withdrawal." This circuit has suggested that the following factors should be considered when determining whether such a request should be granted:

These include: (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir.1994). The district court concluded that none of these factors—with the possible exception of prejudice to the government—weighed in defendant's favor. Among other things, the district court concluded that the decision to withdraw the plea some eight months after it had been entered was based upon dissatisfaction with the recommended sentence, which the court found to be "precisely the sort of tactical maneuver that courts do not tolerate." Defendant also failed to maintain his innocence throughout the proceedings as evidenced by his guilty plea. Finally, the district court noted that defendant was fully informed of the consequences of his plea before he entered into it.

We affirm based upon the reasoning of the district court.

## 3.  *Amount of Marijuana at Issue*

### a.  *Standard of Review*

"A district court's factual findings regarding the amount of cocaine for which a defendant is to be held accountable are accepted by this court unless clearly erroneous." *United States v. Baro*, 15 F.3d 563, 568 (6th Cir.1994). Where the

amount is uncertain, the district court is encouraged to "err on the side of caution" and only hold the defendant responsible for that quantity of drugs for which "the defendant is more likely than not actually responsible." *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.1990).

### b. The District Court's Reasoning

During the sentencing hearing, the district court determined that defendant was responsible for transporting 150 to 200 pounds of marijuana on three separate occasions. The court relied upon the recommendation of the presentence report, which based its assessment upon interviews with federal agents who stated that defendant had ordered others to transport this quantity of marijuana. Accordingly, the district court sentenced him for an offense involving over 600 pounds of marijuana.

■ Defendant contends that he should have been held responsible for—at most—159 pounds of marijuana, not the 609 pounds ultimately attributed to him. (The presentence report indicated that 104 pounds were found in his home and 55 pounds were sold by Mueller.) In his view, the "unsubstantiated" claims made by Mueller that he transported additional marijuana with defendant are insufficient to establish the higher amount by a preponderance of the evidence. However, defendant admitted during his original plea colloquy that he transported 150–400 pounds of marijuana on at least three separate occasions. Therefore, it was proper to sentence him for a conspiracy to distribute over 600 pounds of marijuana.

### 4. Role as a Supervisor

As suggested by the presentence report, the district court enhanced defendant's base offense level by two points for his supervisory role in the offense pursuant to

U.S.S.G. § 3B1.1(c): "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity . . . increase by 2 levels."

### a. Standard of Review

This court has recently noted some confusion governing the standard of review for this guideline:

We note at the outset that it is unclear what standard of review we employ with regard to a district court's enhancement decision under § 3B1.1. A few years ago it was clear that we reviewed a district court's factual findings for clear error and legal conclusions de novo. *See, e.g., United States v. Taylor*, 248 F.3d 506, 515 (6th Cir.), *cert. denied*, 534 U.S. 981, 122 S.Ct. 414, 151 L.Ed.2d 315 (2001). The Supreme Court's decision in *Buford v. United States*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001), however, has suggested that deference may be appropriate when we review a district court's application of the Guidelines, especially when it involves fact-bound determinations, issues that district courts may have comparatively greater expertise in addressing, or situations in which there will be limited value to uniform court of appeals precedent. In *United States v. Dupree*, 323 F.3d 480 (6th Cir.2003), this court noted that the impact of *Buford* on supervisory enhancements had not been resolved, stating that "standard of review for enhancements under § 3B1.1 is now open to question." *Id.* at 494. The *Dupree* court apparently did not resolve this thorny question.

*United States v. Solorio*, 337 F.3d 580, 600 (6th Cir.2003) (footnote omitted).

### b. The District court's Reasoning

During the sentencing hearing, the district court provided the following rationale for the enhancement:

The probation officer determined from interviewing federal agents on the case that marijuana was transported at Mr. Gallatin's request on three other occasions between September and November of 2000....

....

[A] preponderance of the evidence exists that Mr. Gallatin directed other individuals to travel to Texas on several occasions to pick up marijuana and bring it back to him. This qualifies him as an organizer, leader or manager or supervisor under ... Section 3B1.1(c).

First, at his plea colloquy, Gallatin admitted, under oath, the he "caused others to travel" to obtain the supply of marijuana. Second, Gallatin admitted that Mueller obtained the needed quantity of marijuana for the confidential informant from Gallatin, again demonstrating his role as a supplier. Defendant advances a perfunctory argument on this issue, simply stating that "there was not sufficient evidence to support a finding that Gallatin had control over anybody else." Despite his assertion, however, the district court pointed to specific criminal activity that defendant supervised. We conclude that the district court's decision to apply this enhancement is appropriate whether we view it through the lens of *de novo* review or the more deferential standard suggested by *Buford*.

### III.

The judgment of the district court is **affirmed.**