NOT FOR PUBLICATION
File Name: 04a0106n.06
Filed: November 18, 2004

NO. 03-6104

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

                                ON APPEAL FROM THE

v.                            UNITED STATES DISTRICT
                                  COURT FOR THE EASTERN

ANTHONY LEE SHARKEY,         DISTRICT OF KENTUCKY

      Defendant-Appellant.

_____/

BEFORE:    SUHRHEINRICH and CLAY, Circuit Judges; and NIXON, District Judge.[*]

      **SUHRHEINRICH, J.**  This is a direct appeal by the Defendant-Appellant, Anthony Lee

Sharkey ("Defendant"), from a criminal judgment and commitment entered in the United States

District Court for the Eastern District of Kentucky, at Covington. We AFFIRM.

### I. Background

      On November 11, 2000, at approximately 9:00 p.m., Mason County Sheriff Deputies Jeffrey

Hord and Steve Fitch responded to a report of domestic violence at the Springhouse Tavern.

Springhouse Tavern is located in Mason County, about four to five miles from 7042 Mt. Gilead

Road, Maysville, Kentucky. Upon arriving at the Springhouse Tavern, Deputy Hord was

approached by Sandra Faris. Hord recognized Faris because he had been at her home the prior week

on a domestic call. Faris and Defendant lived at 7042 Mt. Gilead Road, Maysville, Kentucky. Faris,

_____

[*]The Honorable John T. Nixon, United States District Judge for the Middle District of
Tennessee, sitting by designation.

who smelled of alcohol and was wet, said Defendant had poured a beer over her head. Hord did not recall Faris staggering or slurring her words.

Hord and Fitch took Faris home to make sure that Defendant was not in the residence. Upon arriving there, Faris asked the officers to search the house to see if Defendant was in the house. The house consisted of six rooms — a living room, utility room, kitchen, bathroom, and two bedrooms. The deputies searched each room, but did not find Defendant.

While searching for Defendant, the deputies noticed loose ammunition on a grill in back of the house, in a spare bedroom that also contained a gun cabinet with an SKS gunstock on top, and on a dresser in Faris' and Defendant's bedroom. Hord recognized the cabinet as a gun safe because he had owned firearms and had friends who owned gun safes. Faris said that Defendant stored guns and ammunition in the safe. Faris tried to open the safe but it was locked and she did not have a key. She also told the deputies that Defendant was a convicted felon. Later that night, Hord ran a criminal history check and found that Defendant had a felony conviction. This information was attached to the affidavit for the search warrant.

On November 13, 2000, Hord obtained a search warrant for the residence. The warrant was executed that day. Defendant was present at the house when officers were waiting for Faris to arrive before executing the warrant. Defendant left the scene upon learning that the officers had a search warrant. Faris let the officers into the house when she arrived, and a locksmith was called to open the gun safe. Prior to opening the safe, Faris gave written consent for the officers to search the premises and she authorized the officers to seize any property they believed necessary to take. Inside of the gun safe, the officers found seventeen firearms, firearms magazines, ammunition, gun papers, and an envelope with Defendant's name. The officers seized these items.

2

Defendant was charged with one count of being a felon in possession of various firearms, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). Defendant pled not guilty, arguing that the warrant was not based on probable cause. Defendant filed a motion to suppress evidence found in the residence. After an evidentiary hearing, the magistrate judge recommended that Defendant's motion be denied. The district court adopted the magistrate's findings and denied the motion to suppress. Thereafter, Defendant entered a conditional plea of guilty to the indictment. The district court sentenced Defendant to sixty-three months imprisonment. This appeal followed.

## II. Standard of Review

This Court reviews a district court's legal conclusions concerning a motion to suppress *de novo*. *United States v. Spikes*, 158 F.3d 913, 922 (6th Cir. 1998). The district court's factual findings are reviewed for clear error, and evidence must be viewed in a light most favorable to the government. *Id.*

## III. Analysis

Defendant's argument that his Fourth Amendment rights against unreasonable search and seizure were violated has three components. First, Defendant contends that no probable cause existed for the issuance of the search warrant because the affidavit in support of the warrant neither indicated the reliability of the informant upon whose statements Hord relied, nor anything to corroborate the information provided by the informant. Secondly, Defendant argues that the evidence should have been suppressed because the information contained in the affidavit for the search warrant was stale, resulting in no probable cause existing at the time the search warrant was issued. Finally, Defendant maintains that the officers exceeded the scope of the search warrant by seizing items not described in the warrant.

3

## A. Probable Cause

Defendant maintains that the affidavit was insufficient to establish probable cause for the warrant to issue because it did not establish Faris' veracity or reliability. Defendant further contends that Officer Hord's verification that he was a convicted felon was insufficient to corroborate Faris' statements.

In reviewing the sufficiency of an affidavit underlying a search warrant, the Supreme Court has instructed that courts employ a "totality of the circumstances" approach. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). The Supreme Court also indicated in *Gates* that although "veracity," "reliability," and "basis of knowledge" are highly relevant in assessing the value of an informant's tip, these elements should not be understood as "entirely separate and independent requirements to be rigidly exacted in every case." *Id.* at 230. Rather, they should be understood as "closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether an informant's tip establishes probable cause. *Id. See also United States v. Allen*, 211 F.3d 970, 972-73 (6th Cir. 2000) (en banc) (discussing *Gates*, 462 U.S. at 230). Furthermore, this Court's precedent reflects a commonsense, totality of the circumstances approach. *See, e.g., Allen*, 211 F.3d at 976 (holding that corroboration was not a necessity where the affidavit otherwise indicated that the informant, named to the issuing magistrate, had purportedly provided reliable information in the past, and who provided details of recent criminal activity).

An issuing magistrate's determination is entitled to "great deference," and should not be reversed unless arbitrarily exercised. *Id.* at 973 (citing *United States v. Swihart*, 554 F.2d 264, 267-68 (6th Cir. 1977)). If the magistrate "had a 'substantial basis for . . . concludi[ing]' that a search would uncover evidence of wrongdoing," the Fourth Amendment is satisfied. *Id.* (quoting *Gates*,

4

462 U.S. at 236) (other citation omitted).

The affidavit in this case does not mention Faris by name, or discuss her reliability or credibility. Yet, as noted above, reliability and credibility are not separate and independent requirements. *See Allen*, 211 F.3d at 972-73 (quoting *Gates*), 462 U.S. at 230; *see also Swihart*, 554 F.2d 264 (holding that when the informant who provides the basis for an affidavit is an identified, non-professional who is the victim of crime, the credibility determination is less stringent because of the circumstances). However, the affidavit does discuss her basis of knowledge as the "alleged victim of the domestic violence" present during the investigation of the complaint, and provides details of recent criminal activity, namely that "she informed Affiant that the alleged perpetrator was the owner of the ammunition, gun stock and gun safe, and there were firearms inside the gun safe, and that the alleged perpetrator, Anthony Sharkey, was a convicted felon." In short, although the informant here did not have a proven track record, she provided detailed information gathered by firsthand observation. *See United States v. Smith*, 182 F.3d 473, 481 (6th Cir. 1999) (stating that "when there is no indication how an informant came by his information . . . explicitness of detail is needed," and holding that "basis of knowledge" element was sufficient because the affidavit indicated how the informant acquired his information about illegal gun possession, "by firsthand observation"). Furthermore, the affiant, Officer Hord, was able to personally verify these details, and subsequently verified Faris' information that Defendant was a convicted felon. *See id.* at 480-81. Armed with this information, we think it was eminently reasonable for the issuing magistrate to conclude that there was "probable cause" to believe evidence of a crime–gun possession by a felon–would be found in the search. Or as the magistrate judge put it:

> Would a reasonable person have believed that illegality was occurring in Defendant
> Sharkey's possession of a gun safe? Hord had information from a person very close

5

to, and actually residing with, Sharkey that Sharkey was a felon and the gun safe contained firearms. Not content with that information, Hord ran a criminal history and confirmed that Sharkey indeed had a felony conviction. Hord saw the gun safe with his own eyes; he also observed ammunition and a gunstock from a Chinese assault weapon. With what he knew, Hord was justified in seeking the warrant.

Defendant relies on *United States v. Campbell*, 256 F.3d 381 (6th Cir. 2001) in support of his contention that the mere verification of his convicted felon status was insufficient to corroborate Faris' statements. In *Campbell*, this Court noted that, in an unpublished decision, we stated that "'merely verifying information such as addresses, phone numbers, license numbers, and even criminal records is not sufficient to corroborate an informant's statement.'" *Id.* at 386 (quoting *United States v. Ingram*, No. 92-5367, 1993 WL 5914, at *1 (6th Cir. Jan. 13, 1993)). However, the *Campbell* court rejected the defendant's argument that the police improperly relied on Campbell's prior felony record in establishing probable cause to search Campbell's residence for evidence he was a felon of possession of a firearm because the affidavit also established that a reliable, confidential informant, provided a tip regarding the location of stolen firearms, that the officers corroborated the informant's statements by setting up a controlled purchase of a stolen firearm from the defendant, and that the officers independently confirmed the defendant's convicted felon status. *Id.*

Although the affidavit in this case, unlike that in *Campbell*, did not state that the informant was credible and had been reliable in the past, it is similar in all other significant respects. Here, the officers were able to confirm Faris' statements through their own direct observations of the gun paraphernalia throughout the house, and to verify her tip that Sharkey was a convicted felon. Thus, *Campbell* actually compels a similar finding here that the affidavit was sufficient to support issuance of the warrant.

6

*Smith*, *supra*, a case upon which *Campbell* relied, further supports the result we reach today. In *Smith,* a reliable, confidential informant stated that he had recently been in the suspect's home and observed weapons. Police officers confirmed the suspect's address and verified that he was a convicted felon. In reversing the district court's finding that the warrant was insufficient, this Court held that "a warrant affidavit which recites that recent criminal activity was personally observed by a highly reliable informant, aspects of which were are corroborated by further police investigation, establishes probable cause." *Smith*, 182 F.3d at 476.

The officers here also verified that Defendant lived at the address and had entered and exited within the last week, because of their response to the earlier domestic disturbance at the residence. Like the officers in *Smith*, the officers in this case verified that Defendant was a convicted felon. And, here, the officers directly observed gun paraphernalia.

In sum, the search warrant affidavit in this case provided sufficient information to establish probable cause for issuance of the warrant.

### B. Staleness

Defendant maintains that the evidence should have been suppressed because the information contained in the affidavit for the search warrant was stale. Defendant argues that because two days had elapsed, there was good reason to believe that Defendant removed the guns and/or the safe from the premises or had moved out. He argues either of these acts would render the warrant stale.

In *Spikes*, *supra*, this Court recognized that the function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate. 158 F.3d at 923. Rather, the question of staleness depends on the nature of the crime. The variables include whether the crime was a chance encounter or a conspiracy the

criminal nomadic or entrenched; the thing to be seized perishable or of enduring utility; the place to be searched a forum of convenience or a secure operational base. *Id.* The length of time between the events listed in the affidavit and the application for the warrant, "while clearly salient, is not controlling." *Id.* Where the evidence reveals that the criminal activity is "of a continuing nature" the passage of time does not necessarily present a staleness problem. *Id.* at 924.

Again, we agree with the magistrate judge's assessment:

> Here, the information in the affidavit was less than two days old when the affidavit was presented to the judicial officer. After issuance, the warrant was executed in less than one day. The *Spikes* factors all support a holding that this case presents absolutely no staleness issue: The crime was not a chance encounter; the criminal was entrenched; the thing to be seized was of "enduring utility" and not perishable; and the place to be searched was a "secure operational base," the subject's residence. *See* 158 F.3d at 923. The crime here was the mere possession of firearms; the information presented in the affidavit described an entire gun safe as being present at the subject property; a gun safe is not easily moved or disposed of, so staleness of the information surrounding its presence is not problematic.

We agree. The warrant was executed within two days of the officers' second visit with Faris to the house and within two days of learning of Defendant's convicted felon status. The police had no reason to believe that Defendant would have moved the firearms. There was also no reason to believe Defendant would change his residence or was no longer living at the residence. Based on the facts the information in the search warrant was not stale.

### C. Excessive Search

Defendant maintains that the officers exceeded the scope of the search warrant by seizing personalty not particularly described in the warrant. Specifically, he claims that the search exceeded the warrant's scope because it did not name firearm magazines, ammunition, or gun papers.

Defendant's claim that the search of the premises exceeded the scope of the warrant because

8

the warrant did not specifically authorize the seizure of anything other than "guns, firearms, rifles and pistols" is not persuasive. Although warrants must state with sufficient particularity the items to be seized, the degree of specificity required in a warrant must be flexible, depending upon the type of items to be seized and the crime involved. *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999). "[A] description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Id*. (citations and quotations omitted); *see also United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000). Because the officers had no knowledge of what specifically the gun safe contained, the warrant relied on a generic class of items, "guns, firearms, rifles and pistols." *See United States v. Henson*, 848 F.2d 1374 (6th Cir. 1988) (holding that search warrant was valid when items not specifically named in warrant were seized, and that where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice.)

In *United States v. Calloway*, 116 F.3d 1129 (6th Cir. 1997), officers executed a valid search warrant for specific documents. During the search, the officers seized other documents that were later found to be beneficial. This Court upheld the seizure as the items were in plain view, of a character that was immediately incriminating, viewed by an officer lawfully located in a place where the documents were seen, and seized by an officer lawfully present. *Id*. at 1133. "Immediately apparent" does not demand great certainty. The standard is assessed by reviewing (1) the "nexus between the seized object and the items particularized in the warrant; (2) whether the intrinsic nature or appearance of the seized object gives probable cause to associate it with criminal activity; and (3) whether probable cause is the direct result of the executing officer's instantaneous sensory perceptions." *Id*. (citing *United States v. Beal*, 810 F.2d 574, 576-77 (6th Cir. 1987)).

9

Like *Calloway*, in this case the officers were lawfully in the residence executing a search warrant. During the officers' search of a gun safe they found magazines, ammunition, and papers related to guns. It was immediately apparent to the officers that these items were a part of the firearms (magazines), intimately associated with the firearms (ammunition), or related to the firearms ("gun papers"). These items were directly related to the criminal activity, felon in possession of a firearm. The items were also found through the executing officer's instantaneous sensory perceptions, in this case the valid search of the gun safe. The seized items were components of the items specified in the warrant. Based on these facts, the officers did not exceed the scope of the search warrant.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.