RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 13-2562

GERALD EUGENE SINGER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cr-00257-1—Gordon J. Quist, District Judge.

Decided and Filed:  March 23, 2015

Before:  KETHLEDGE and DONALD, Circuit Judges; McCALLA, District Judge.[*]

───────────────

## COUNSEL

**ON BRIEF:**  Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant.  Michael A. MacDonald, Christopher M. O'Connor, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## AMENDED OPINION

───────────────

BERNICE BOUIE DONALD, Circuit Judge.  Gerald Eugene Singer appeals his convictions and sentence on multiple criminal charges, including mail fraud, use of fire to commit mail fraud, arson, tax fraud, and obstruction of the administration of the internal revenue laws.  After a jury rendered a guilty verdict on twelve of fifteen counts, the district court

───────────────

[*]The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

sentenced Singer to a total term of fifty-five years in prison. On appeal, Singer argues that: (1) the mail-fraud count of his indictment was duplicitous; (2) the district court should have severed the tax-fraud counts from the other charged offenses; (3) certain counts in the indictment were outside of the relevant statute of limitations or brought within an improper venue; and (4) the district court erred by imposing consecutive sentences under 18 U.S.C. § 844(h). For the reasons discussed below, we **AFFIRM** Singer's convictions and sentence.

**I.**

The government alleged that Singer, a landlord in Muskegon, Michigan, devised an "arson for profit" scheme in which he acquired various properties at below-market prices, obtained insurance policies well exceeding the purchase prices, and then caused the destruction of the properties by deliberately setting fires in order to obtain insurance payments for his personal benefit. Singer owned or had a legal interest in numerous investment, rental, and commercial properties, mostly in the Muskegon area. Between 1993 and 2007, nine of Singer's properties suffered significant damage from arson. A 2009 investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives uncovered numerous witnesses, including Singer's tenants, who admitted at trial that Singer and his son encouraged them to set fire to various properties.

The following table summarizes each of the fires charged in the indictment, as well as Singer's insurance demands and ultimate payouts:

| Fire Location | Purchase Price | Fire Date | Insurer | Insurance Demand | Payment |
|---|---|---|---|---|---|
| 530 Elliott St. Grand Haven, MI | $16,000 | 03/01/93 | Allstate Insurance Co. | $26,153 | $25,903 |
| 2809 Hoyt St. Muskegon Heights, MI | $7,000 | 07/23/95 | Michigan Millers Mutual Insurance | $60,665 | $60,665 |
| 3101 8th St. Muskegon Heights, MI | $6,000 | 08/25/96 | American States Insurance | $45,800 | $7,500 |
| 2820 Peck St. Muskegon Heights, MI | $150,000 | 09/01/97 | Auto Owners Insurance | $325,000 | $40,000 |
| 1292 E. Broadway Norton Shores, MI | $49,000 | 06/20/99 | Hartford Insurance, Westport Insurance | $657,000 | $500,000 |

| Fire Location | Purchase Price | Fire Date | Insurer | Insurance Demand | Payment |
|---|---|---|---|---|---|
| 2340 Wood St. Muskegon Heights, MI | $12,000 | 08/22/02 | Farm Bureau General Insurance Co. | $105,000 | $0.00[1] |
| 1019 E. 35th Place Gary, IN | $10,000 | 06/21/06 | Ohio Casualty Insurance | $40,405 | $17,500 |
| 250 Myrtle St. Muskegon, MI | $12,151 | 11/09/06 | Foremost Insurance | $69,000 | $59,196 |
| 2608-2614 7th St. Muskegon Heights, MI | $33,269 | 08/28/07 | Farm Bureau General Insurance Co. | $273,000 | ($4,000)[2] |
| **TOTALS** | **$295,420** | | | **$1,602,023** | **$706,764** |

The government further alleged that Singer filed false tax returns for the years 2005 through 2008. Specifically, the government asserted that Singer falsely reported "net operating losses" ("NOL") despite his receipt of insurance payments offsetting them. An agent of the Internal Revenue Service ("IRS") interviewed Singer on July 18, 2011. During that interview, Singer told the agent that the $500,000 NOL he reported on his tax returns represented his financial loss arising from the 1999 fire at the 1292 E. Broadway property—a fabric store known as "The Fair"—in Norton Shores, Michigan. Singer never reported his receipt of $500,000 in insurance proceeds, which would have eliminated his NOL claims, to the IRS. Singer's false NOL claims reduced his taxable income by $100,000 in 2005, $10,000 in 2006, $40,000 in 2007, and $30,000 in 2008.

Finally, the government alleged that Singer corruptly endeavored to obstruct the due administration of the tax laws, in violation of 26 U.S.C. § 7212(a). Specifically, the government asserted and introduced evidence that Singer (1) filed false tax returns; (2) made false and misleading statements to IRS officials; (3) misled his tax return preparer; (4) concealed income from the IRS by storing it in a "safe haven" bank account; (5) concealed insurance proceeds

---

[1]In a related criminal proceeding against one of Singer's tenants, Ray Martin Haynes, Jr., the district court ordered Haynes to pay restitution of $106,261.83 to Farm Bureau Insurance. *See United States v. Haynes*, No. 1:09-cr-00254-GJQ-1, ECF No. 21 at PageID 55 (W.D. Mich. Apr. 2, 2010). We affirmed Haynes' sentence on appeal. *United States v. Haynes*, 579 F. App'x 473 (6th Cir. 2014).

[2]After Farm Bureau Insurance denied his claim on the 7th Street building, Singer filed a civil lawsuit in the Muskegon County Circuit Court. Singer later filed a voluntary stipulation of dismissal and paid $4,000 to Farm Bureau to compensate its legal expenses in defending the lawsuit.

through several "structured" individual payments of $10,000 from his attorney; and (6) caused multiple tenants to file false tax returns claiming first-time homebuyer credits with the IRS, portions of which they then paid over to Singer.

On September 7, 2011, a grand jury in the Western District of Michigan returned a fourteen-count indictment against Singer. On October 6, 2011, the grand jury returned a superseding indictment adding a fifteenth count. Count 1 charged Singer with mail fraud related to the above-referenced arson scheme, in violation of 18 U.S.C. § 1341. Counts 2-7 charged Singer with use of fire to commit mail fraud related to the arsons at 3101 8th Street (Count 2), 1292 E. Broadway (Count 3), 2340 Wood Street (Count 4), 1019 E. 35th Place (Count 5), 250 Myrtle Street (Count 6), and 2608-2614 7th Street (Count 7), in violation of 18 U.S.C. § 844(h). Counts 8-10 charged Singer with the arsons of 2340 Wood Street (Count 8),[3] 250 Myrtle Street (Count 9), and 2608-2614 7th Street (Count 10), in violation of 18 U.S.C. § 844(i). Counts 11-14 charged Singer with making false statements on his tax returns, in violation of 26 U.S.C. § 7206(1). Finally, Count 15 charged Singer with obstructing the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a).

After a trial lasting more than three weeks, the jury convicted Singer of mail fraud (Count 1), three counts of using fire to commit mail fraud (Counts 3, 6, and 7), two counts of arson (Counts 9 and 10), four counts of making false statements on tax returns (Counts 11-14), and one count of obstructing tax administration (Count 15). The jury acquitted Singer of three counts of using fire to commit mail fraud (Counts 2, 4, and 5).

On November 7, 2013, the district court sentenced Singer to a total of fifty-five years' imprisonment: five-year terms on each of Counts 1, 9, and 10, and three-year terms on each of Counts 11-15, all to run concurrently; a ten-year term on Count 3, to run consecutively to all other counts; a twenty-year term on Count 6, to run consecutively to all other counts; and a twenty-year term on Count 7, to run consecutively to all other counts. The court rejected Singer's argument that the court should not "stack" his § 844(h) sentences consecutively because his underlying convictions did not involve the use of explosives and because his "second or

---

[3]Upon Singer's motion under Federal Rule of Criminal Procedure 29(a), the district court dismissed Count 8—the arson charge related to the 2340 Wood Street property—finding that the property was a private residence and not a "property used in interstate or foreign commerce" as required by 18 U.S.C. § 844(i).

subsequent" § 844(h) convictions stemmed from the same prosecution as his first. In addition, the court ordered Singer to pay $653,140 in restitution to various insurance companies and the IRS and to forfeit $559,196 to the United States.

Singer timely appealed.

## II.

We first address Singer's claim that Count 1 of the indictment was duplicitous. We then address Singer's arguments regarding misjoinder, the statute of limitations and venue, and sentencing under § 844(h).

## A.

Singer first argues that Count 1 of the indictment was fatally duplicitous because it charged numerous separate mail-fraud offenses involving distinct mailings and arsons in one mega-count. "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) (quoting *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002)) (internal quotation marks omitted). When a defendant asserts that an indictment is duplicitous for the first time on appeal, we apply plain-error review unless the defendant objected to the district court's jury instructions. *United States v. Kakos*, 483 F.3d 441, 445 (6th Cir. 2007). Because Singer did not so object, plain-error review applies to his duplicity challenge. Accordingly, we may overturn Singer's conviction on Count 1 only if there was plain error that affected his "substantial rights." *United States v. Lloyd*, 462 F.3d 510, 514 (6th Cir. 2006); *see also United States v. Page*, 520 F.3d 545, 548 (6th Cir. 2008) (characterizing the plain-error standard as a "high burden").

A mail-fraud conviction requires proof of three elements: "(1) devising or intending to devise a scheme to defraud (or to perform specified fraudulent acts); (2) involving a use of the mails; and (3) for the purpose of executing the scheme or attempting to do so." *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997). Count 1 of the indictment charged that Singer "knowingly and unlawfully devise[d] a scheme and artifice to defraud" several insurance companies and other persons "of money, funds, credits and similar property rights." The count described the particulars of the scheme and then listed seventeen mailings in furtherance of the

scheme between November 10, 2006, and May 7, 2009.  We hold that the count was not duplicitous.

In *United States v. Robinson*, we held that an indictment charging conspiracy to commit wire and mail fraud in the first count, and substantive wire and mail fraud in the second and third counts, was not duplicitous.  651 F.2d 1188, 1194-95 (6th Cir. 1981).  In doing so, we approved the government's decision "[t]o avoid unnecessarily complex and confusing allegations and the concomitant prejudice to [the defendant] of charging him with scores of substantive counts arising out of the same scheme" by "particulariz[ing] in one count the different acts that were part of the single scheme."  *Id.*  Our sister circuits have employed similar reasoning.  *See, e.g.*, *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) ("[A]cts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)) (internal quotation marks omitted)); *United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986) (holding that an indictment alleging involvement in a mail-fraud scheme comprised of four different investment programs could "fairly be read to charge but a single scheme and [was] therefore not duplicitous").

Even if we assumed that Count 1 of Singer's indictment was duplicitous, however, duplicity is only reversible if it prejudices the defendant.  *See Olmeda*, 461 F.3d at 281 ("Duplicitous pleading . . . is not presumptively invalid.").  Singer argues that the duplicity of Count 1 prejudices him because it hinders his ability to plead a defense under the Double Jeopardy Clause of the Fifth Amendment if the government pursues additional mail-fraud charges against him for the arsons referenced in Count 1.  Additionally, he argues that the evidence at trial demonstrated the impermissibly wide scope of the conduct alleged in Count 1, as confirmed by the fact that the jury acquitted him of certain arsons referenced in the count.  We reject Singer's arguments.

As an initial matter, we note that the proof at trial is irrelevant to the question of whether an indictment is duplicitous.  *See United States v. Gordon*, 844 F.2d 1397, 1400 (9th Cir. 1988) ("Our task is solely to assess whether the indictment can be read to charge only one violation in each count.").  Moreover, it is unclear how the government could initiate any future prosecution

based on the conduct set forth in Count 1 without violating the Double Jeopardy Clause. In any event, we have no difficulty concluding that Count 1 of the indictment acceptably charged Singer with a single scheme to defraud that included multiple mailings. *See United States v. Robinson*, 294 F. App'x 630, 632 (2d Cir. 2008) ("It does not follow . . . from the difference of the identity of the recipients . . . in, and the time elapsed between, the earlier and later charged offense conduct, that [the defendant] was not engaged in a single continuing scheme."); *see also United States v. Damrah*, 412 F.3d 618, 622 (6th Cir. 2005) ("It is not duplicitous to allege in one count that multiple means have been used to commit a single offense."). And it is difficult to imagine how a single mail-fraud count—as opposed to seventeen or more—prejudiced Singer. *See United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (noting that the placement of multiple mailings arising out of a mail-fraud scheme "in a single count achieves the obvious benefit of limiting the maximum penalties defendant may face if convicted of mail fraud and also avoids the unfairness of portraying the defendant to the jury as the perpetrator of 50 crimes").

**B.**

Singer next argues that the district court should have severed the tax charges in the indictment (Counts 11-15) from the rest of the case because they were unrelated to the mail-fraud and arson charges and carried a risk of spillover prejudice. Here, Singer concedes that he did not move for severance at the district court. But nothing in the record suggests that his failure to do so was intentional. Accordingly, we review his misjoinder claim for plain error. *See United States v. Soto*, --- F.3d ---, 2015 WL 1036665, at *7 (6th Cir. Mar. 11, 2015) (holding that, under the current version of Rule 12 of the Federal Rules of Criminal Procedure, effective December 1, 2014, "we do not treat the failure to file a motion as a waiver unless the circumstances of the case indicate that the defendant intentionally relinquished a known right"). Plain error exists where there is (1) an error (2) that is "clear or obvious," (3) which "affected the appellant's substantial rights," and (4) which "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)) (internal quotation marks omitted). In view of the inextricably related nature of Counts 11-15 and the other charges in the indictment, we find no plain error in the district court's consideration of the indictment as a whole.

Federal Rule of Criminal Procedure 8(a) provides that an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."[4] We construe Rule 8(a) in favor of joinder and evaluate whether joinder of multiple offenses was appropriate with an eye toward the four corners of the indictment. *United States v. Deitz*, 577 F.3d 672, 691-92 (6th Cir. 2009). Under this permissive approach, "[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (alteration in original) (quoting *United States v. Wirsing*, 719 F.2d 859, 863 (6th Cir. 1983)) (internal quotation marks omitted). "Consolidating offenses that arise from the same or related acts saves resources [and] allows the jury to see the complete set of facts about the alleged criminal enterprise . . . ." 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure, § 143, at 35-40 (4th ed. 2008).

Despite Singer's assertions to the contrary, the tax charges in the indictment arose directly out of the alleged mail fraud and arsons. The false "net operating losses" Singer reported on his tax returns were part and parcel of the fraudulent arson of the fabric store known as "The Fair." Similarly, the allegations in Count 15 regarding Singer's efforts to evade the tax laws relate directly to the fraudulent insurance claims and arsons alleged in other portions of the indictment. We have long held that "tax counts can properly be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged[.]" *Wirsing*, 719 F.2d at 864 (quoting *United States v. Kopituk*, 690 F.2d 1289, 1313 (11th Cir. 1982)); *see also United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) ("Tax and related counts covering the same time period and involving the same evidence are properly joined."); *United States v. Bibby*, 752 F.2d 1116, 1121 (6th Cir. 1985) ("It is appropriate to combine tax charges against one defendant with fraud charges against that same defendant . . . if the tax evasion charges arise directly out of the common illicit enterprise."). This makes sense in view of the fact that "concealment of ill-gotten gain is an integral part of assuring the success of . . .

---

[4]Rule 14(a), by contrast, vests discretion in the district court to order separate trials of counts "[i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government . . . ."

illegal activity." *Bibby*, 752 F.2d at 1121. In this case, the joinder of the tax charges and the mail-fraud and arson charges in a single prosecution was not plain error.

## C.

Singer's third argument is two-pronged. First, he asserts that Count 2 is outside the applicable ten-year statute of limitations[5] because the fire undergirding that count took place in April 1996—more than fifteen years before the grand jury returned the first indictment in this case in September 2011. Second, he argues that the government should not have charged Count 5 in an indictment in the Western District of Michigan because the fire undergirding that count took place in Gary, Indiana. Singer failed to raise these issues in the district court, so we review them under the plain-error standard. *See United States v. Damra*, 621 F.3d 474, 501 & n.8 (6th Cir. 2010) (holding that failure to raise a statute-of-limitations argument in the district court subjects the argument to plain-error review on appeal); *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005) (holding that, where a defendant does not object to a defect in venue that is "apparent on the face of the indictment" before trial, the objection is waived).

Singer's argument that the ten-year statute of limitations on Count 2 began to run in April 1996, when the fire occurred, misses the mark. An offense under 18 U.S.C. § 844(h) is not "committed" until a fire or explosive is used to commit *another* felony—in this case, mail fraud. *See United States v. Beardslee*, 197 F.3d 378, 385 (9th Cir. 1999) ("[A] violation of section 844(h) is not complete until *both* a fire and a 'felony which may be prosecuted in a court of the United States' have occurred."). "The statute of limitations begins to run when a crime is complete, that is, when each element of the crime charged has occurred." *United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008). As noted above, an essential element of mail fraud is use of the mails. *Frost*, 125 F.3d at 354. Count 2 alleges a mailing occurring as recently as April 30, 2003. That renders the count—first alleged on September 7, 2011, and restated in a superseding indictment a month later—well within the ten-year statute of limitations. Therefore, the crime alleged in Count 2 was not outside the relevant statute of limitations and no plain error arose from its consideration at trial.

---

[5]*See* 18 U.S.C. § 3295 ("No person shall be prosecuted . . . under [18 U.S.C. § 844(h)] unless the indictment is found . . . not later than 10 years after the date on which the offense was committed.").

Singer's venue argument also fails.  Pursuant to 18 U.S.C. § 3237(a), "any offense . . . begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  The government need only prove that venue was appropriate by a preponderance of the evidence.  *United States v. Zidell*, 323 F.3d 412, 420-21 (6th Cir. 2003).  That standard is satisfied here; Count 5 specifically alleged, and trial testimony confirmed, that Singer sent a mailing from Muskegon, Michigan, to Gary, Indiana, on June 30, 2006.  Thus, venue in the Western District of Michigan was proper in this case.  *Cf. United States v. Parlier*, 570 F. App'x 509, 513-14 (6th Cir. 2014).

**D.**

Finally, Singer argues that we must vacate his 55-year sentence because the district court impermissibly "stacked" his § 844(h) convictions consecutively to one another.  At the district court, Singer argued that a "second or subsequent" conviction under § 844(h) must occur in a separate proceeding from one giving rise to his first § 844(h) conviction.  On appeal, however, Singer makes a different argument:  that a defendant may only be convicted of one § 844(h) count where the defendant is only charged with one substantive felony.  Singer failed to make this argument at the district court, so we review for plain error.

Singer asserts that because each of his § 844(h) convictions arises out of the same indictment, the sentences on those convictions must merge under the reasoning espoused in *United States v. Sims*, 975 F.2d 1225, 1235-36 (6th Cir. 1992).  In *Sims*, we held that where an indictment contains only one substantive drug-trafficking offense and separate counts under 18 U.S.C. § 924(c) "for weapons which fall into more than one weapons category as defined by that section, the court must consolidate those section 924(c) counts, either pre- or post-trial so that no defendant will be convicted on more than one gun count relative to the one drug trafficking offense."  *Id.* at 1235.  Consequently, we held, "defendants who have been convicted of section 924(c) violations involving weapons carrying different penalties must be sentenced to the highest applicable sentence" contemplated by the statute.  *Id.* at 1236.

Here, as Singer points out, he was indicted on only one stand-alone count of mail fraud.  But each of his § 844(h) convictions was based on a different fraudulent mailing and a different

fire. Thus, for each § 844(h) charge, the government had to prove that Singer committed a different predicate felony. *Sims* is therefore inapposite: in that case, the government indicted the defendant on two § 924(c) counts based on the same underlying drug transaction. *Id.* at 1230. We recognize that the government's decision to charge each fire as a separate § 844(h) offense is arguably in conflict with its theory that the fires all were part of the same underlying scheme. But the government could have charged each fraud individually—indeed, Singer argues elsewhere that the government was required to do so. And Singer cites to no case that holds that the government's decision to charge one substantive mail-fraud count instead of several precludes multiple convictions under § 844(h). Thus, it was not plain error for the district court to decline to merge Singer's § 844(h) convictions.

Singer's argument that only one sentence under § 844(h) was appropriate because the government did not offer proof that he used explosives is equally unavailing. Singer preserved this argument at the district court, so we review the district court's conclusion de novo. *United States v. Elliott*, 757 F.3d 492, 494 (6th Cir. 2014); *see also United States v. Thompson*, 728 F.3d 1011, 1015 n.6 (9th Cir. 2013) (explaining that questions of statutory interpretation related to § 844(h) are reviewed de novo). Section 844(h) provides that second or subsequent convictions shall not "run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried." Singer asserts that the statute's omission of fire and explicit mention of explosives indicates Congress' intent to limit consecutive sentences to those where the defendant used an explosive. The federal courts of appeals repeatedly have rejected this well-worn argument. Singer acknowledges the most recent case to do so—*United States v. Creech*, 408 F.3d 264 (5th Cir. 2005)—but argues that its reasoning was not extensive and actually contravenes the plain language of § 844(h). We disagree. In *Creech*, the Fifth Circuit correctly held that the statute's language is inclusive rather than exclusive, and that the statute "in no way attempts to limit the stacking provision to felonies in which explosives are used but explicitly merely includes such felonies." 408 F.3d at 272-73; *see also* 18 U.S.C. § 844(h) ("[N]or shall the term of imprisonment imposed under this subsection run concurrently with *any* other term of imprisonment *including* that imposed for the felony in which the explosive was used or carried." (emphases added)). Other federal appellate courts universally agree. *See United States v. Colvin*, 353 F.3d 569, 574 (7th Cir. 2003) (en banc) ("[T]he structure

of [18 U.S.C. § 844(h)] suggests that Congress intended to treat fires and explosives as interchangeable[.]"); *United States v. Grassie*, 237 F.3d 1199, 1215 (10th Cir. 2001) ("It is irrational to view § 844(h)(1) as first explicitly linking fire and explosives for additional punishment when used in committing any felony then, sub silentio, delinking fire from that pairing for purposes of the cumulative punishment clause . . . ."); *Sicurella v. United States*, 157 F.3d 177, 178-79 (2d Cir. 1998) (per curiam) (confirming that "§ 844(h)'s requirement of consecutive sentencing does apply to fire-related felonies"). In rejecting Singer's argument that his consecutive sentences under § 844(h) were illegal, we join in the reasoning of the above-cited decisions.

**III.**

For the foregoing reasons, we **AFFIRM** Singer's convictions and sentence.