**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 15a0692n.06

**Case No. 14-2219**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 13, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     **Plaintiff-Appellee**, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| SHERI ROSENBAUM, | ) | |
| | ) | |
|     **Defendant-Appellant.** | ) | |
| | ) | **O P I N I O N** |

BEFORE: GIBBONS and McKEAGUE, Circuit Judges; ANDERSON, District Judge.[*]

**McKEAGUE, Circuit Judge.** Sheri Rosenbaum was part of a fraudulent scheme to obtain mortgage loans by making misrepresentations on loan applications and submitting fraudulent documents to banks. In addition, she submitted fraudulent credit card applications in her son's name and used those cards to rack up thousands of dollars in debt. Rosenbaum was subsequently convicted on four counts of bank fraud and one count of aggravated identity theft. On appeal, Rosenbaum raises several issues regarding her indictment, trial, conviction, and sentence. Each of her arguments is without merit. We affirm.

---

[*] Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

**I**

*Mortgage Fraud.* Defendant-appellant Sheri Rosenbaum operated as a mortgage broker, submitting loan applications on behalf of borrowers seeking financing. Rosenbaum was compensated directly by lenders when they approved mortgage loans. To increase the likelihood of approval, Rosenbaum knowingly submitted loan applications with falsified information on borrowers' employment, income, and assets. In some cases, she created counterfeit documents to support her misrepresentations.

Rosenbaum submitted three fraudulent mortgage loan applications between 2007 and 2008. Around August 2007, she submitted an application on behalf of N.B. to refinance the property located at 4575 Wabeek Forest Dr. in Bloomfield Hills, Michigan for $660,000. The application represented that N.B. was a doctor making approximately $265,000 annually. In truth, N.B.'s husband was a doctor, but he died prior to August 2007. To support the application, Rosenbaum submitted counterfeit W-2 forms switching N.B.'s income with her late husband's. N.B. was unable to make the mortgage payments and defaulted on the loan. After foreclosure recouped $310,000, the bank suffered a $350,000 loss.

Between March and June 2008, Rosenbaum submitted another fraudulent application on behalf of D.R. for a $261,000 loan to purchase the property located at 71 Winder Street in Detroit, Michigan. The application stated D.R. was employed by NuLise Properties and made approximately $115,000 annually, when in fact D.R. was employed by the State of Michigan and made less than $50,000 per year. To support the application, Rosenbaum submitted a counterfeit paycheck and verification of employment. Ultimately, the loan application was not approved.

Finally, in April 2008, Rosenbaum submitted a fraudulent application with Ricardo Del Valle[1] to obtain a mortgage loan in the name of B.W. for the property located at 1491 Fairway, Birmingham, Michigan. Rosenbaum again submitted false documents, including a fraudulent check and bank account statement. A $279,000 loan was approved on April 15, 2008, but B.W. was unable to make the mortgage payments. However, the bank agreed to a loan modification instead of foreclosing and suffered no loss from the loan.

*Credit Card Fraud.* In 2005, Rosenbaum submitted two fraudulent credit card applications in the name of her minor son S.F. On May 20, 2005, Rosenbaum applied for an American Express card in S.F.'s name. She used S.F.'s actual name and social security number, but stated his date of birth as August 12, 1967, and also represented that he was employed with an annual income of $280,000. Rosenbaum's son was born on August 12, 1997, was seven years old at the time, and we think it is safe to assume that he was unemployed. Rosenbaum's fraudulent application was granted, and she obtained a primary card in her son's name and a supplemental card in her own name. Rosenbaum used these cards to make a number of purchases, and American Express eventually closed the account with an unpaid balance of $49,804.80.

In October 2005, Rosenbaum applied for an additional credit card in her son's name from Capital One Bank. Rosenbaum's application followed the same pattern, using her son's actual name and social security number, but misrepresenting his date of birth and listing his annual income as $160,000. The application was approved, and Rosenbaum used the card in her son's name to make purchases for her own benefit. Capital One closed the account with no outstanding balance.

---

[1] Del Valle pleaded guilty to conspiracy to commit bank fraud and assisted in Rosenbaum's investigation and prosecution. Del Valle was sentenced to 15 months' imprisonment, but based on his assistance his sentence was reduced and he was released after 8 months.

*Search and Seizure.* The FBI began investigating complaints of mortgage fraud surrounding Rosenbaum and Del Valle in August 2006. FBI Special Agent Brett Leatherman was assigned to the case, and during his investigation he also discovered information about Rosenbaum's credit card fraud. Between February and April 2008, Special Agent Leatherman spoke to four witnesses and served subpoenas on American Express and Capital One Bank regarding Rosenbaum's fraudulent credit card use. Based on these witnesses and conversations with American Express, Leatherman was aware Rosenbaum had taken out credit cards in her son's name and misrepresented her son's date of birth and income on the applications.

Special Agent Leatherman obtained a valid warrant to search Rosenbaum's residence for evidence of mortgage fraud, but the warrant made no mention of credit card fraud. The warrant listed the items to be seized, including "[a]ll mortgage related documents and records," bank statements, checks, computer passwords and other data security devices, and documents regarding ownership of the searched premises. On July 17, 2008, Leatherman executed the search warrant. While searching Rosenbaum's house, he found American Express and Capital One credit cards in Rosenbaum's son's name sitting out on a table. And, while searching Rosenbaum's purse for mortgage documents and passwords, he found a note indicating Rosenbaum's son was born on August 12, 1967. At that point, Special Agent Leatherman knew he had found evidence of credit card fraud:

> So, I was already aware of the credit cards based on my prior investigation. And this particular piece of paper, in my mind, confirmed the fact that these credit cards were, in fact, taken out in his name. I should also say that that was the first day I had ever put eyes on [Rosenbaum's son]. He was at the house at the time of the search warrant and he was clearly under ten years of age . . . . It was immediately apparent to me that that was evidence of criminal activity.

Prior to trial, Rosenbaum moved to suppress the evidence, arguing it was beyond the scope of the warrant. The district court denied the motion, finding the credit cards and note were

in plain view and that it was immediately apparent to Special Agent Leatherman they were evidence of credit card fraud.

*Indictments.* Rosenbaum was indicted for the first time in the Second Superseding Indictment filed December 29, 2011.[2] The indictment charged Rosenbaum with: conspiracy to commit bank fraud relating to the Fairway property (Count One); bank fraud relating to the Wabeek property (Count Three); bank fraud relating to submitting fraudulent credit card applications to American Express and Capital One in her son's name (Count Four); and aggravated identity theft for using her son's identification to commit bank fraud (Count Five). This indictment contained two errors. First, it made one mistaken reference to Capital One instead of American Express in Count Four. Second, although Count Five indicated the identity theft stemmed from fraudulent credit card use in Rosenbaum's son's name, it mistakenly referred to the underlying fraud as being "specified in Count Two of this First Superseding Indictment" instead of Count Four of the Second Superseding Indictment.

The government filed a Fourth Superseding Indictment[3] against Rosenbaum on August 1, 2013. The indictment charged Rosenbaum with three counts of bank fraud and aiding and abetting for the Fairway property (Count One), the Winder property (Count Two), and the Wabeek property (Count Three). The indictment also charged Rosenbaum with bank fraud for fraudulent credit card use in her son's name (Count Four) and aggravated identity theft for using her son's identification while committing bank fraud (Count Five). This indictment contained further mistakes. Although the Second Superseding Indictment correctly indicated the Wabeek transaction occurred in or about August 2007, Count Three of the Fourth Superseding Indictment mistakenly referenced April 2008. Count Three also made one stray reference to the "Winder"

---

[2] The Indictment and First Superseding Indictment only charged Ricardo Del Valle.

[3] The government filed a "Third Superseding Information" as to Del Valle on June 13, 2012.

Loan Package, even though Count Three focused on the Wabeek property. Finally, Count Four still included the mistaken reference to Capital One Bank instead of American Express. However, the government did correct the aggravated identity charge (Count Five) to reference the underlying felony as the bank fraud "in Count Four of this Fourth Superseding Indictment."

Just before trial, the government moved to amend the Fourth Superseding Indictment to correct the three remaining errors. Rosenbaum stipulated to correcting the mistake in Count Four so that it referenced American Express Centurion Bank. However, Rosenbaum did not agree to the amendments to Count Three correcting the date and reference to Winder. Nevertheless, the district court granted the government's motion, allowed the amendments and tried Rosenbaum under the Amended Fourth Superseding Indictment.

*District Court Proceedings.* Rosenbaum proceeded to trial, and after both sides presented their cases the district court instructed the jury prior to deliberations. Among other things, the district court instructed the jury on the second element of aggravated identity theft—whether "the defendant knowingly used a means of identification of another person without lawful authority." The district court went on to define "without lawful authority," explaining that "[i]f the defendant obtained someone else's means of identification and used it for some unlawful purpose, the defendant has acted 'without lawful authority.'" Rosenbaum was ultimately convicted on all five charges.

Under the Sentencing Guidelines, Rosenbaum's recommended sentence for the four counts of bank fraud depended on the total loss caused by her fraud. The district court originally calculated the loss as being above $400,000, meaning the recommended Guidelines range was 37–46 months. The district court then sentenced Rosenbaum to 24 months for bank fraud after considering the Guidelines range and the factors in 18 U.S.C. § 3553(a). However, before

entering judgment, the parties informed the district court that the correct amount of loss was actually $391,000, with a new applicable Guidelines range of 30–37 months. In a second hearing, the district court re-imposed the same 24-month sentence, explaining that "at the time of sentencing [the court] concluded that a sentence of 24 months was the appropriate sentence . . . . The Court continues to believe that a 24-month sentence is the appropriate guideline and the Court re-imposes the prior sentence." Rosenbaum did not object.

Rosenbaum raises five arguments on appeal: (1) the district court erred in denying her motion to suppress the evidence of credit card fraud; (2) the district court erred by allowing amendments to the Fourth Superseding Indictment; (3) her indictment on aggravated identity theft (Count Five) fell outside the statute of limitations; (4) the district court erred in its jury instruction on the definition of "without lawful authority" for aggravated identity theft; and (5) her sentence was procedurally and substantively unreasonable. We reject each in turn.

**II**

First, we address whether the district court erred in denying Rosenbaum's motion to suppress the credit cards and note seized by Special Agent Leatherman. When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006). We consider the evidence in the light most favorable to the government. *Id.*

As an initial matter, we need only decide whether the evidence seized comes within the plain view exception to the Fourth Amendment's warrant requirement. Rosenbaum's motion to suppress focused solely on the fact that the evidence seized was not described in the warrant, *not* that the warrant lacked particularity on its face. Although Rosenbaum now makes a conclusory argument that the warrant lacked particularity in general, we normally do not consider new

suppression arguments raised for the first time on appeal. *United States v. Critton*, 43 F.3d 1089, 1093 (6th Cir. 1995); *see also United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). That is especially true here, where Rosenbaum raises her new particularity argument without a shred of evidentiary or legal support.

Turning to the heart of Rosenbaum's argument, we agree that the evidence seized comes within the plain view exception. An officer may seize evidence not described in the warrant if four factors are satisfied: (1) the evidence is in plain view; (2) its incriminating character is "immediately apparent"; (3) the officer is lawfully in the place where the evidence can be seen; and (4) the officer has lawful access to the evidence. *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013); *see also Horton v. California*, 496 U.S. 128, 136–37 (1990). Rosenbaum challenges only the second factor, arguing that because the warrant related to *mortgage* fraud, the incriminating character of evidence of *credit card* fraud was not "immediately apparent."

When an officer executes a valid warrant for documentary evidence, he may seize evidence outside the warrant's scope if his prior knowledge makes the evidence's incriminating character "immediately apparent." *See United States v. Calloway*, 116 F.3d 1129, 1133 (6th Cir. 1997). In *Calloway*, federal agents seized documents in plain view that were not described in the warrant based on their prior knowledge that the documents were evidence of criminal activity. *Id.* We held the documents were admissible under the plain view exception because the warrant "required [officers] to seize certain documentary evidence," the agents were required to examine the evidence they discovered, and the incriminating character of the evidence was "immediately apparent." *Id.*

Here, the district court found that Special Agent Leatherman had prior knowledge indicating Rosenbaum had fraudulently obtained and was using credit cards in her son's name. Special Agent Leatherman testified he had been investigating Rosenbaum for credit card fraud for months prior to the search. He interviewed four witnesses and subpoenaed American Express and Capital One Bank for information, discovering that, when applying for these cards, Rosenbaum indicated her son was born in 1967 and had an annual income of $280,000. Upon seeing that Rosenbaum's son was younger than ten—not 38 or 39, as the applications indicated—it would have been "immediately apparent" to Leatherman that credit cards in Rosenbaum's son's name and a note indicating he was born in 1967 were incriminating. Based on this record, we find no error in the district court's denial of Rosenbaum's motion to suppress.

### III

Rosenbaum next argues the district court improperly allowed three amendments to the Fourth Superseding Indictment correcting clerical mistakes. We review whether there was an improper amendment to the indictment *de novo*. *United States v. Prince*, 214 F.3d 740, 756 (6th Cir. 2000) (citing *United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998)). A grand jury's indictment protects three constitutional rights: (1) fair notice of the charges; (2) protection against double jeopardy; and (3) indictment by a grand jury. *United States v. Combs*, 369 F.3d 925, 935 (6th Cir. 2004). Although the general rule is that an indictment may only be amended by the grand jury, federal courts allow amendments when "the change is merely a matter of form." *Russell v. United States*, 369 U.S. 749, 770 (1962). As our prior cases establish, changes of form include corrections of clerical or typographical errors. *See United States v. Budd*, 496 F.3d 517, 534 n.3 (6th Cir. 2007) ("Of course, correction of a scrivener's error presents no problem."); *Short v. United States*, 471 F.3d 686, 693 (6th Cir. 2006) (explaining that "[c]ertain

types of changes," including mere matters of form, "fall outside of the prohibition against amending an indictment"); *United States v. Lake*, 985 F.2d 265, 271 (6th Cir. 1993) (affirming amendment of an indictment at trial "since the court merely corrected a typographical error in the citation of a statute"). We allow these corrections because they "d[o] not alter the charging terms" of the indictment and therefore do not jeopardize a defendant's constitutional protections, particularly fair notice of the charges. *See id.*

First, Rosenbaum challenges the stipulated amendment to the Fourth Superseding Indictment, changing "Capital One Bank issued Platinum MasterCard" to "American Express Centurion Bank issued credit card" in paragraph 31 of Count Four.[4] Count Four charged Rosenbaum with bank fraud against Capital One and American Express. Paragraphs 26–28 related to Capital One, while paragraphs 29–31 related to American Express. In particular, paragraphs 29–31 were subtitled "American Express Centurion Bank," referenced "American Express" four times, and incorrectly referenced Capital One Bank only once. As such, we hold that this stray reference to Capital One in paragraph 31 was a clerical error and the stipulated amendment was a permissible change in form.

Second, Rosenbaum challenges the district court's decision to allow an amendment to the Fourth Superseding Indictment changing the date in Count Three from "April 2008" to "August 2007." The government concedes this is a clerical error, but points out that the Second Superseding Indictment correctly listed the date in Count Three as August 2007, placing Rosenbaum on notice of the date her alleged criminal conduct took place. Rosenbaum argues her defense was based around the April 2008 date and that she did not consent to the amendment. However, she does not argue she lacked notice of the charges or dates, and she was properly

---

[4] The government argues Rosenbaum waived this argument by stipulating to the amendment to Count Four and failing to object to the amendments to Count Three. Because we find all three amendments were mere changes in form to correct clerical errors, and not impermissible amendments, we need not address the issue of waiver.

indicted for conduct occurring in August 2007. Because Rosenbaum has not demonstrated the correction of this clerical error prejudiced her in any meaningful way, we hold the amendment was also a permissible change in form.

Finally, Rosenbaum challenges another amendment to Count Three, which fixed an errant reference to the "Winder Loan Package" so that it correctly referenced the "Wabeek Loan Package." The Fourth Superseding Indictment charged Rosenbaum with three counts of bank fraud and aiding and abetting in relation to three separate properties: the Fairway property (Count One), the Winder property (Count Two), and the Wabeek property (Count Three). While Count Three related to the Wabeek property, in paragraph 22 it incorrectly referenced the "Winder Loan Package." However, the Fourth Superseding Indictment, read in its entirety, confirms this was yet another clerical error. Count Three's subtitle named the Wabeek property, Count Three referenced the Wabeek property three times, and it titled relevant documents the "Wabeek Loan Package." It appears the government copied paragraph 16 from Count Two— which related to the Winder property—and neglected to change "Winder" to "Wabeek." Given the clear indication that Count Three related to the Wabeek property, we find no error in allowing an amendment to correct this clerical error.

Was the government sloppy in drafting the indictments? Probably. But Rosenbaum's argument boils down to simply identifying clerical errors without demonstrating that they deprived her of notice or prejudiced her defense in any meaningful way. As such, we find no error in the district court's decision to permit the amendments.

**IV**

Rosenbaum's third argument is that Count Five of the Fourth Superseding Indictment, for aggravated identity theft, fell outside the five-year statute of limitations. The conduct in Count

Five occurred on or about May 27, 2008, more than five years before the Fourth Superseding Indictment was brought on August 1, 2013. While Rosenbaum was first charged with aggravated identity theft for the same conduct in the Second Superseding Indictment—brought on December 29, 2011, well within the limitations period—she argues the second indictment charged a "separate crime" that did not toll the statute of limitations. As Rosenbaum failed to raise this issue in the district court, we review only for plain error. *United States v. Singer*, 782 F.3d 270, 278 (6th Cir. 2015); *United States v. Crossley*, 224 F.3d 847, 858 (6th Cir. 2000).

Once the government brings an indictment, the statute of limitations is tolled as to the charges in that indictment. *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999) (citing *United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976)). A superseding indictment relates back to the original—even if the superseding indictment is filed outside the limitations period—so long as it does not "broaden" the charges. *Id.* Notice is the key to determining whether a superseding indictment improperly broadens the original because it allows the defendant to prepare an adequate defense. *Id.* at 229 (describing notice as the "touchstone"). Accordingly, "[a] pleading defect, and nothing more, should not bar the prosecution of [a] defendant[] when a reading of the indictment as a whole gives notice [of the amended charge]." *Id.* at 228.

The question before us, then, is whether the Fourth Superseding Indictment improperly broadened the charges in the Second Superseding Indictment. The Second Superseding Indictment charged Rosenbaum with aggravated identity theft in Count Five, but referenced the wrong underlying felony:

> On or about May 27, 2008, in the Eastern District of Michigan, defendant SHERI ROSENBAUM (D-2), did knowingly use, without lawful authority, a means of identification of another person, namely a credit card and credit-card account number in the name of S.F., during and in relation to the felony violation of bank fraud, 18 U.S.C. § 1344, specified in Count *Two* of this *First* Superseding Indictment, in violation of 18 U.S.C. § 1028A(a)(1).

The Fourth Superseding Indictment changed two words, so that Count Five now referenced "Count *Four* of this *Fourth* Superseding Indictment."

The Second Superseding Indictment gave Rosenbaum adequate notice she would have to prepare a defense for aggravated identity theft. Count Four charged Rosenbaum with bank fraud for fraudulently applying for and using credit cards in her son's name. Count Five, immediately following, charged Rosenbaum with aggravated identity theft and notified her it was related to fraudulently using credit cards in her son's name. While Count Five incorrectly referenced the First Superseding Indictment, Rosenbaum can hardly claim she was unaware of the charges (aggravated identity theft) or the underlying criminal conduct (credit-card fraud).

A cursory examination of the indictments reveals nothing more than a clerical error.[5] The only change in Count Five from the Second to the Fourth Superseding Indictment was the correction of the internal reference to the underlying bank fraud. Beyond that, the indictments are identical in Count Five: both charge aggravated identity theft, reference bank fraud as the underlying felony, and allege Rosenbaum fraudulently used a credit card in her son's name. Count Four, setting forth the underlying bank fraud, is essentially the same in both indictments. Further, the actual First Superseding Indictment makes no reference to credit-card fraud, does not charge Rosenbaum, and does not even mention Rosenbaum or her son. After reviewing the indictments as a whole, we conclude the incorrect reference to the First Superseding Indictment had no impact on whether Rosenbaum received sufficient notice of the charges or criminal conduct in Count Five.

---

[5] The clerical nature of the error is self-evident: the Second Superseding Indictment referenced "Count Two of *this* First Superseding Indictment." Obviously, the Second Superseding Indictment was not, in fact, "this" First Superseding Indictment.

Tellingly, Rosenbaum does not claim this clerical error deprived her of notice or prejudiced her defense in any way. She asserts the Second Superseding Indictment "alleges a different crime from that alleged in Count Five of the Fourth Superseding Indictment, the count and indictment upon which she was tried and convicted." In truth, Rosenbaum does no more than identify the mistake. She does not contend she was unaware of the charges, nor does she argue the pleading defect caused her to prepare a defense against the wrong charge. She simply points out the error and claims that, because it was corrected after the statute of limitations had run, her conviction should be vacated. But, as we have explained, the Second Superseding Indictment gave Rosenbaum sufficient notice of the charges in Count Five. We hold the Fourth Superseding Indictment relates back to the Second and does not fall outside the statute of limitations. Therefore, we find no error in Rosenbaum's conviction on Count Five.

## V

Rosenbaum's fourth argument is that the district court incorrectly instructed the jury on aggravated identity theft and that there was insufficient evidence to convict her on that charge. A defendant commits aggravated identity theft if he "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" during and in relation to a predicate felony offense. 18 U.S.C. § 1028A(a)(1). Rosenbaum concedes every element except one, arguing she did not act "without lawful authority" because Michigan law permitted her to obtain and use credit cards in her son's name.[6] Her argument misses the point; the issue was not whether she could obtain and use credit cards using her son's identification, but whether she had the "lawful authority" to do so *fraudulently*.

---

[6] Rosenbaum admitted to using her son's identification to apply for and use credit cards in his name. She was convicted of bank fraud for submitting the applications and using the credit cards fraudulently in violation of 18 U.S.C. § 1344, which is one of the enumerated predicate felonies for aggravated identity theft. *See* § 1028A(c)(5) (referencing provisions relating to bank fraud).

*Jury Instruction.* Rosenbaum first challenges the district court's jury instruction on the meaning of "without lawful authority." We review jury instructions for abuse of discretion. *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007). "Without lawful authority" means the defendant "unlawfully misused" another's identification, even if he lawfully possessed it. *United States v. Lumbard*, 706 F.3d 716, 725 (6th Cir. 2013). The vast majority of circuits have held the same. *See id.* at 721; *United States v. Osuna-Alvarez*, 788 F.3d 1183, 1885 (9th Cir. 2015) (collecting cases). Further, we do not limit the scope of "without lawful authority" to situations where the defendant could not legally use another's identification *at all*. *Lumbard*, 706 F.3d at 723–24. Rather, a defendant acts "without lawful authority" when he uses another's identification to commit one of the felonies enumerated in § 1028A. *Id.*; *United States v. Mobley*, 618 F.3d 539, 547–48 (6th Cir. 2010); *United States v. Otuya*, 720 F.3d 183, 190 (4th Cir. 2013).

In *Mobley*, a husband used his wife's identification to submit fraudulent credit card applications. 618 F.3d at 547–48. We held that "a defendant's use of *any* social security number—*including his own*—to submit fraudulent credit applications must be 'without lawful authority.'" *Id.* We reiterated this point in *Lumbard* and foreshadowed its application here: "even if [a] child gives permission to his mother to use his information in, for example, a *fraudulent credit application*, the mother has not acted with 'lawful authority' . . . *because its use is still 'contrary to law.'"* 706 F.3d at 723–24 (emphasis added). Based on this precedent, if a defendant commits one of the enumerated underlying felonies while using another's identity, he necessarily acts "without lawful authority."

The district court gave the following instruction: "[t]he phrase 'without lawful authority' does not require that the defendant stole the means of identification from another person. If the

defendant obtained someone else's means of identification and used it for some unlawful purpose, the defendant has acted 'without lawful authority.'" The district court also instructed the jury that Rosenbaum's use must have been "during and in relation to the crime of the bank fraud alleged in Count Four."

Rosenbaum makes a distinction based on the *source* of the fraud, arguing she could legally apply for and use a credit card in her son's name, and therefore did not act "without lawful authority" even though the applications were fraudulent. This distinction is irrelevant: even assuming Rosenbaum had legal authority to apply for credit cards in her son's name,[7] she still acted "without lawful authority" because her credit card applications and use were fraudulent.[8] The question for the jury, then, was whether Rosenbaum used her son's identification to commit the underlying felony of bank fraud. Because the district court's instructions correctly framed this inquiry, we find no abuse of discretion.

*Sufficiency of the Evidence.* Rosenbaum also challenges the sufficiency of the evidence for her conviction on aggravated identity theft. Her argument does nothing more than rehash her previous legal contention. While she asserts "there was nothing to establish [her] conduct was done without lawful authority," she bases her conclusion solely on her mistaken understanding of the meaning of "without lawful authority." We have already found this argument unpersuasive, and Rosenbaum offers no additional reason why the evidence was insufficient. Accordingly, we affirm Rosenbaum's conviction for aggravated identity theft.

---

[7] Because Rosenbaum's bank fraud stemmed from fraudulent statements regarding her son's age, employment, and income, rather than from using his identification, we need not address whether Michigan law permits a custodial parent to obtain and use a credit card in his child's name.

[8] Rosenbaum also argues our interpretation of "without lawful authority" subjects her to double jeopardy. Her argument is not entirely clear, but she seems to suggest that our interpretation could lead to a defendant being found guilty of aggravated identity theft for using his *own* identification. As § 1028A requires using "a means of identification of *another person*," Rosenbaum's argument is wholly without merit.

**VI**

Rosenbaum's final argument is that her 24-month sentence for bank fraud was procedurally and substantively unreasonable. First, she argues it was procedurally unreasonable to re-impose a 24-month sentence after lowering the Guidelines range to 30–37 months to correct an error. Second, she argues her sentence was substantively unreasonable because she could not have foreseen the mortgage crisis in 2007.

*Procedural Unreasonableness.* Rosenbaum argues that the district court erred by failing to reduce her 24-month sentence after the Guidelines range was corrected from 37–46 to 30–37 months. Because she failed to raise procedural objections in the district court, we review for plain error. *Lumbard*, 706 F.3d at 725. To show plain error, a defendant must prove the district court made (1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Simmons*, 587 F.3d 348, 360 (6th Cir. 2009). Generally, we defer to the district court, holding a sentence procedurally inadequate only "if the district judge fails to consider the applicable Guidelines range or neglects to consider other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Id.* at 358; *see also United States v. Rita*, 551 U.S. 338, 356 (2007) ("The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances.").

Rosenbaum has not shown that the district court erred procedurally in imposing her sentence. At Rosenbaum's first sentencing hearing, the district court calculated the total loss from her bank fraud as just over $400,000. Using that calculation, the Sentencing Guidelines range was 37–46 months. U.S.S.G. § 2B1.1(b)(1)(H). The district court imposed a below-

Guidelines sentence of 24 months, taking into consideration the factors in § 3553(a) and the purpose of Rosenbaum's sentence. At a second sentencing hearing 26 days later, the parties informed the district court that the correct loss was approximately $391,000, resulting in a new Guidelines range of 30–37 months. U.S.S.G. § 2B1.1(b)(1)(G). The district court decided that the change in the Guidelines did not affect Rosenbaum's sentence, explaining that "at the time of sentencing [the court] concluded that a sentence of 24 months was the appropriate sentence and varied from the Guidelines range that the Court had determined to be appropriate. The Court continues to believe that a 24-month sentence is the appropriate guideline and the Court re-imposes the prior sentence."

Rosenbaum argues the district court should have lowered her sentence once it realized the Guidelines range was lower. However, her only support is a blanket assertion that "[t]here was no other comment by the District Court as to why it would not lower the sentence or otherwise consider the reduction in the guidelines range . . . as to reducing her sentence." Rosenbaum does not challenge the procedural reasonableness of the first sentencing hearing, where the district court imposed her 24-month sentence and gave its reasons for doing so. At the second hearing, the district court stated that its previous explanation still applied, even in light of the changed Guidelines range. We cannot agree that failing to reduce her sentence even lower than 24 months—still well below the Guidelines range—was procedural error or required new explanation by the district court. *See United States v. Mendez*, 498 F.3d 423, 428 (6th Cir. 2007) (per curiam) (explaining that "we may look to the more thorough explanation furnished at the original sentencing hearing"). Based on the record and Rosenbaum's lack of evidentiary support, we find no procedural error, much less plain error.

*Substantive Unreasonableness.* The crux of Rosenbaum's argument is that it was substantively unreasonable to impose a 24-month sentence based on the loss from her mortgage fraud when she could not have predicted the mortgage crisis. We follow a two-step process to determine the loss used to calculate the defendant's sentence. First, we determine the "reasonably foreseeable pecuniary harm"—in other words, the actual or intended loss from the loan. *See United States v. Kerley*, 784 F.3d 327, 347 (6th Cir. 2015) (citing U.S.S.G. § 2B1.1 cmt. n.3(A)); *United States v. Wendlandt*, 714 F.3d 388, 393–94 (6th Cir. 2013). The actual loss is "the full amount of unpaid principal on the fraudulently obtained loan." *Wendlandt*, 714 F.3d at 393–94 (citation omitted); *United States v. Minor,* 488 F. App'x 966, 969 (6th Cir. 2012). Second, we offset the loss by the amount recovered by the victim to calculate a final loss attributable to the defendant. *See Kerley*, 784 F.3d at 347; *Wendlandt*, 714 F.3d at 394.

Rosenbaum's loss was calculated from the mortgage fraud in Count 3. The unpaid balance on that mortgage was $660,000, and the foreclosure yielded only $310,000. That left the difference—the loss used to calculate the Sentencing Guidelines range—at $350,000. The overall loss, including Rosenbaum's credit card fraud, came to $391,000. As our prior cases establish, this loss was properly used to calculate the applicable Guidelines range.

Nevertheless, Rosenbaum latches onto the requirement that the harm be "reasonably foreseeable" to argue that the mortgage crisis made default on the loans she fraudulently secured "unforeseeable." We disagree. When a defendant commits mortgage fraud, the amount of foreseeable loss is the loan amount less the recovery by the victim.[9] In addition, the facts of this case undermine Rosenbaum's argument. Rosenbaum's fraud included forging documents to

---

[9] Rosenbaum's argument ignores the reality of mortgage loans. Whenever a person takes out a loan, there is always a foreseeable possibility that he will default. The reasons behind default may vary, but the fact that one reason (the mortgage crisis) may have been more unpredictable than others (loss of a job, hospital bills, etc.) does not mean default itself was unforeseeable.

secure mortgages her victims could not pay. How, then, could it be "unforeseeable" that they would default? If anything, Rosenbaum's conduct made default—and the ensuing loss used for her sentence—*more* foreseeable. Regardless, the impact of the mortgage crisis is irrelevant. Because the district court correctly calculated the loss from mortgage fraud as the outstanding loan less the amount recovered at foreclosure, we hold that Rosenbaum's sentence was not substantively unreasonable and affirm her sentence.

**VII**

After considering Rosenbaum's arguments, we find no error and **AFFIRM**.